### 41175. ALVIN v. THE STATE.
(325 SE2d 143)

BELL, Justice.

Alvin was convicted of malice murder, criminal damage to property in the first degree, possession of a firearm during the commission of a crime, and terroristic threats and acts. OCGA § 16-5-1 (a); OCGA § 16-7-22; OCGA § 16-11-106 (a); OCGA § 16-11-37. Alvin's motion for new trial was denied, and he now appeals.[1] We affirm.

The four crimes for which Alvin was convicted occurred on March 23, 1983. At that time Alvin was living in Riceboro, Georgia with the murder victim, Darlene Walker, and her twelve-year-old son, Lamont Williams. Alvin had lived with and supported Walker and Lamont for about twelve years. According to Alvin, on the morning of March 23, 1983, he left his house with his shotgun and went fishing and hunting. Around noon, he went to the courthouse in Hinesville, Georgia to make a child support payment.

At the courthouse Alvin spoke with the victim of the terroristic threats and acts, Officer Charles Godley of the local Child Support Recovery Unit. Godley and Richard Herring, another officer in the Child Support Recovery Unit, both testified that Alvin became angry during his discussion with Mr. Godley and threatened to kill him. Godley testified that Alvin pulled a buckshot shell from his pocket and told him that he had "plenty of ammunition to do what he needed to do." Alvin denied threatening Godley.

After leaving the Child Support Recovery Unit, Alvin went home. He said he had a beer with Walker and a neighbor, Lawrence Wilson,

---

[1] The crime was committed on March 23, 1983. A Liberty County jury returned its verdict of guilty on November 1, 1983. A motion for new trial was filed on November 29, 1983. The transcript of evidence was filed on January 4, 1984. The motion for new trial was denied on May 4, 1984. The record was docketed in this court on May 17, 1984 and January 2, 1985. It was submitted to this court for decision without oral argument on June 29, 1984.

before leaving to go to a local convenience store. According to Alvin, when he got home he picked up his gun from the back seat so he could use it to go hunting that evening, and went to the back door. Discovering it was locked, he called for Walker to open it. He said that when there was no answer, he fired the gun at the lock on the door. Alvin testified that he then heard Walker scream, and that he thought he might have hit her. He said he had no idea she was behind the door when he pulled the trigger. Following the shooting, Alvin walked to the street, where he met Lawrence Wilson five to ten minutes later. Alvin gave Wilson the gun.

Lamont Williams testified to a different version of events. Because Alvin's house did not have running water, Alvin and Walker had to get their water next door. Lamont testified that Alvin and Walker argued over the water shortly before the shooting. According to Lamont, Walker sent him next door to get some water. When Lamont went next door, Alvin was also outside, and Walker then locked the door. Lamont said that Alvin went to his car, got his gun, came to the back door, and fired the gun through it. At trial Alvin acknowledged that there was no dead bolt lock on the back door, and that he could have merely knocked out a glass pane in the top half of the door, and reached inside and opened it.

The back door was elevated about two feet above ground level, and forensic evidence showed that Alvin stood on the ground, held the shotgun close to the door, and fired at an upward angle. The blast entered the door about two feet below the lock. Alvin told an arresting officer that "the bitch locked me out of my damn house and I'll kill anybody." Evidence was admitted showing that Alvin had stabbed Walker during an argument four to five weeks earlier.

Following the shooting, Walker was treated by an emergency medical technician. She was bleeding profusely from the right leg. She later died from a massive loss of blood resulting from perforation of the femoral artery by the shotgun blast.

1. In his fifth enumeration of error Alvin contends that the offenses of criminal damage to property and possession of a firearm during the commission of a felony are lesser included offenses of murder, and merged therewith. Alvin thus contends that his convictions and sentences for those crimes must be set aside.

With respect to the offense of possession of a firearm during the commission of a felony, Alvin's contention has been decided adversely to him. *Wilson v. Zant*, 249 Ga. 373 (2) (290 SE2d 442) (1982); *Wiley v. State*, 250 Ga. 343 (6) (296 SE2d 714) (1982); *Miller v. State*, 250 Ga. 436 (298 SE2d 509) (1983). However, applying the "actual evidence" test of our substantive double jeopardy provisions, see OCGA §§ 16-1-7 (a), 16-1-6, we find that Alvin's conviction for criminal

damage to property in the first degree must be set aside. The "actual evidence" test, in effect, means " 'that if the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under Code Ann. § 26-505 (a) [now OCGA § 16-1-6 (1)].' " *Haynes v. State*, 249 Ga. 119 (2) (288 SE2d 185) (1982) (quoting Justice, now Presiding Justice Marshall's concurrence in *Stephens v. Hopper*, 241 Ga. 596, 605 (247 SE2d 92) (1978)).

In the present case, the evidence used to establish that Alvin committed the crime of criminal damage to property in the first degree — that he fired his shotgun through the back door, knowing that Darlene Walker was in the house and possibly standing behind the door — was used to establish that Alvin committed the crime of malice murder. Thus, the criminal damage to property offense was established by the same but less than all of the facts required to establish the offense of murder. OCGA § 16-1-6 (1). Accordingly, the criminal damage to property offense was a lesser included offense of murder, and the conviction and sentence therefor must be set aside. OCGA §§ 16-1-6 (1), 16-1-7 (a); *Haynes v. State*, supra, 249 Ga. at 120-121.

2. Having decided that Alvin's conviction and sentence for criminal damage to property in the first degree must be set aside, Alvin's fourth enumeration of error, which also concerns that conviction, need not be addressed.

3. Although Alvin does not challenge the sufficiency of the evidence with respect to his other three convictions, we find that, after viewing the evidence in a light most favorable to the jury's verdict, any rational trier of fact could have found Alvin guilty of those three crimes beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. In his first enumeration of error Alvin contends that a question by the trial court improperly put his character in issue, and that his motion for mistrial on that ground should have been granted. We disagree. The trial court's question merely inquired whether defense counsel, by the testimony he was eliciting, intended to put the defendant's character in issue. Accordingly, the trial court did not err in denying Alvin's motion for mistrial. *Ladson v. State*, 248 Ga. 470 (12) (285 SE2d 508) (1981).

5. Alvin contends that the trial court erred in not excluding the testimony of a witness, Electa Andrews, whose name he alleges was not on any of the witness lists he received before trial.

However, contrary to Alvin's assertion, the record reflects that he was served with a supplemental witness list containing Ms. Andrews' name five days before trial. We find that this left Alvin a reasonable amount of time in which to interview the witness. See *Hicks v. State*, 232 Ga. 393, 399 (207 SE2d 30) (1974). Moreover, before the witness

took the stand for direct examination the trial court provided defense counsel ten minutes in which to interview the witness, and also informed defense counsel that he could defer his cross-examination of the witness until the following day, so as to have an additional opportunity to interview her. Under these circumstances we find that the purpose of OCGA § 17-7-110 was satisfied, and that the trial court did not err in permitting Ms. Andrews to testify. *White v. State,* 253 Ga. 106 (3) (317 SE2d 196) (1984); *Cates v. State,* 245 Ga. 30 (3) (262 SE2d 796) (1980).

6. In his third enumeration of error Alvin contends that the trial court failed to inquire sufficiently into twelve-year-old Lamont Williams' competency, and thus erred in permitting him to testify.

"The statutory test for determining the competency of a child to testify is that the child understand the nature of an oath: OCGA § 24-9-5 (Code Ann. § 38-1607). This court has interpreted this statutory requirement to mean that a child 'know and appreciate the fact that as a witness he assumes a solemn and binding obligation to tell the truth relative to the case and concerning such matters as he may be interrogated on, and that if he violates the obligation, he is subject to be punished by the court.' *Smith v. State,* 247 Ga. 511, 512 (277 SE2d 53) (1981); *Jones v. State,* 219 Ga. 245, 246 (132 SE2d 648) (1963). The trial court has a sound discretion to determine whether a child is competent to testify. *Gordon v. State,* 186 Ga. 615 (198 SE 678) (1938)." *Hill v. State,* 251 Ga. 430 (306 SE2d 653) (1983).

We find that the trial court did not abuse its discretion in the instant case. The trial court's questions covered the applicable requirements of competency, and Lamont's answers thereto authorized the trial court to find him competent to testify.

7. In his sixth enumeration of error Alvin argues that the trial court erred in allowing the state to elicit testimony concerning the incident in which Alvin stabbed the victim, Darlene Walker. Alvin contends that that testimony improperly placed his character in issue. We disagree. Evidence of prior difficulties between an accused and a victim is admissible to illustrate the accused's motive, intent, or bent of mind toward the victim, even though it incidentally places his character in issue. *Hales v. State,* 250 Ga. 112 (2) (296 SE2d 577) (1982); *Elliott v. State,* 253 Ga. 417 (3) (320 SE2d 361) (1984). The evidence of the stabbing incident was properly admitted.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED JANUARY 29, 1985.

*John E. Pirkle,* for appellant.
*Dupont K. Cheney, District Attorney, Claude M. Kicklighter,*

*Jr., Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr.,* for appellee.