358 S.E.2d 188

**STATE of West Virginia**

v.

**Wetzel SMITH.**

No. 17190.

Supreme Court of Appeals of
West Virginia.

May 15, 1987.

Mary Rich Maloy, Asst. Atty. Gen., for appellant.

Mark William McOwen, Huntington, for appellee.

MILLER, Justice:

Wetzel "Junior" Smith appeals his March 14, 1985 conviction for first degree murder with a recommendation of mercy. His principal argument on appeal is that the trial court erred in admitting two categories of extrajudicial or hearsay statements: (1) those made before and after the shooting by a coindictee who died prior to trial, and (2) those made by the deceased within two days of his death. With one exception, we find that the statements were properly admitted and affirm the conviction.

The State's case may be briefly summarized and the disputed evidence will be discussed in more detail. Early on the morning of June 26, 1983, the body of Sheldon "Slim" Wright was discovered lying in the bedroom of his house near Milton, West Virginia. He was approximately sixty-five years of age. He had sustained a gunshot wound to his right temple. While no weapon was in the immediate vicinity, a small caliber pistol and a rifle were recovered by police from the living room and bedroom. It appears that the actual time of death was earlier, occurring on the evening of June 25, 1983.

The State medical examiner after detailing his examination of the deceased's body was of the view that the gunshot wound caused the death and that it was not self-inflicted.[1] A ballistics expert indicated that the bullet retrieved from the deceased's body matched the pistol found in the living room, although he conceded on cross-examination that a bullet from a similar .22 caliber Luger would have the same markings.

The State's most damaging testimony was that of Nancy Underwood, the woman who had accompanied the defendant on the night of the shooting. The defendant was the deceased's stepson and lived with him. Ms. Underwood had been drinking with the defendant for a considerable period of time prior to the homicide. She testified that she was seated on the front porch of the Wright house when she overheard the defendant and Mr. Wright arguing over money. She then heard two gunshots, after which Mrs. Wright exclaimed, "Oh, my God, Junior, you did it!" Afterwards, she heard the defendant make a telephone call, but did not know with whom he was speaking.

She testified that when she entered the house minutes later, she saw Mr. Wright slumped over in a chair in the living room. He was already dead. The defendant was carrying a small pistol in his pocket. She assisted the defendant in carrying the body into the bedroom where it was placed in the bed. On cross-examination, Ms. Underwood was impeached with a prior statement in which she claimed she had heard no shots, had been asleep in a nearby car most of the evening, and had known nothing about the shooting until she was aroused by a police officer during their investigation.

The defendant testified briefly in his own behalf to deny having killed or having conspired to kill Sheldon Wright. He also denied having made the statements attributed to him by his mother through the paramedics.

I.

The defendant does not make any objection to the relevancy of the disputed evi-

---

1. It is argued that the testimony of the medical examiner regarding the manner of death was impermissible under *State v. Clark,* 171 W.Va. 74, 297 S.E.2d 849 (1982), insofar as it embraced an ultimate issue to be decided by the jury. However, in *Clark* we said that a medical examiner "may give his opinion as to the physical and medical cause of death." 171 W.Va. at 78, 297 S.E.2d at 853. We indicated he could not invade the province of the jury by giving the ultimate fact conclusion that it was a "homi-

cide." Since *Clark,* we have adopted Rule 704 of the West Virginia Rules of Evidence, which was in existence at the time of this trial and which, in relevant part, stated: "(a) *Generally.—* Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." As originally adopted, Rule 704 had a subsection (b) relating to expert testimony

dence which consisted of two statements made by the deceased within two days of his death that the defendant had taken $100 from him and had taken his car. A third statement was made by the deceased's wife, who died prior to the trial, and was to the effect that the defendant was fighting with the deceased shortly prior to the shooting. We need not, therefore, discuss the relevancy question under the other crimes provisions of Rule 404(b) of the West Virginia Rules of Evidence.[2]

### A.

### STATEMENTS OF EDNA WRIGHT

Edna Wright, the deceased's wife, was originally indicted with the defendant, but died prior to trial. At trial, Mrs. Ginny Smith testified to two telephone conversations she had with Mrs. Wright on the evening of the shooting. Mrs. Wright initially called Mrs. Smith and related that her husband was fighting with the defendant and that they had been drinking. She wanted Mrs. Smith's husband to get her out of the house. Mrs. Smith said Mrs. Wright sounded very agitated and she could hear loud shouting in the background. She indicated to Mrs. Wright that her husband would not come over, but that she would call the police for her. Subsequently, Mrs. Smith called back to tell Mrs. Wright the police would not assist in the matter and suggested that Mrs. Wright call the emergency room and go to the hospital. She was aware that Mrs. Wright had recently been discharged from the hospital.[3]

The trial court admitted the various statements of Edna Wright under Rule 803(2), W.V.R.E., the excited utterance exception to the hearsay rule, which provides: [4]

on the insanity issue. This section was deleted on October 16, 1985.

2. Rule 404(b) of the Rules of Evidence provides:
   *"Other Crimes, Wrongs, or Acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
   As to the relevancy of other violent acts between a defendant and a deceased, courts have generally permitted such evidence to show ill will or hostility as bearing upon intent, malice, and motive for the homicide. *See State v. Headley,* 168 W.Va. 138, 142, 282 S.E.2d 872, 875 (1981); *State v. Featherman,* 133 Ariz. 340, 651 P.2d 868 (1982); *White v. Arkansas,* 290 Ark. 130, 717 S.W.2d 784 (1986); *Alvin v. State,* 253 Ga. 740, 325 S.E.2d 143 (1985); *Jenkins v. State,* 263 Ind. 589, 335 N.E.2d 215 (1975); *State v. Germain,* 433 So.2d 110 (La.1983); *State v. Hunt,* 305 N.C. 238, 287 S.E.2d 818 (1982). *See generally* McCormick on Evidence § 190 (3d ed. 1984); 2 J. Weinstein & M. Berger, Weinstein's Evidence at 404–84, *et seq.* (1986). We have discussed the limitations surrounding the use of evidence of other crimes at some length in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986).

3. No objection is made on appeal that the voice on the telephone purporting to be Mrs. Wright was not authenticated as required by Rule 901(b)(5) & (6), W.V.R.E. This rule adopts the common law, of evidence which requires a telephone conversation to be authenticated in order to be initially admissible. Authentication can occur by the recipient of the call testifying to having familiarity with the caller's voice through previous telephone conversations. Another method of authentication is through other corroborative evidence which would establish that the facts related by the caller were such as would likely be known only to the individual alleged to be the speaker. McCormick on Evidence § 226 (3d ed. 1984); Annot., 79 A.L.R.3d 79 (1977). Here, the State did not ask Mrs. Smith if she were familiar with Mrs. Wright's voice even though Mrs. Smith was married to Mr. Wright's nephew and lived in the same area.
   We believe, however, sufficient corroboration did occur when Mrs. Smith testified that she called Mrs. Wright back to inform her of the inaction of the police. This return call authenticated the earlier call made by Mrs. Wright since it was to her residence and she conversed with Mrs. Smith about the same general topic that was involved in the earlier phone call. Furthermore, her reference to Mrs. Wright having been recently released from the hospital was confirmed by other testimony at trial. *Cf. Palos v. United States,* 416 F.2d 438 (5th Cir.1969), *cert. denied,* 397 U.S. 980, 90 S.Ct. 1107, 25 L.Ed.2d 391 (1970); *United States v. Benjamin,* 328 F.2d 854 (2d Cir.), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1631, 12 L.Ed.2d 497 (1964); *United States v. Noriega,* 437 F.2d 435 (9th Cir.), *cert. denied,* 402 U.S. 908, 91 S.Ct. 1380, 28 L.Ed.2d 648 (1971); *State v. Thibodeau,* 89 S.D. 404, 233 N.W.2d 326 (1975).

4. Some courts have admitted such statements, where there is no exciting event, under the present sense impression exception to the hearsay rule. Rule 803(1), W.V.R.E. One of the best discussions of this exception is found in *Booth v. State,* 306 Md. 313, 508 A.2d 976 (1986). *See generally* McCormick on Evidence § 298 (3d

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

"(2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

Our Rule 803(2), along with our other Rules of Evidence, is substantially patterned after the Federal Rules of Evidence. It is generally recognized that the Federal Rules of Evidence were designed to codify the common law rules of evidence. In particular, Rule 803 of the Federal Rules relating to excited utterances has continued much the same requirements of the common law rule,[5] i.e., that a startling event must have occurred, that the statement must have been made while the declarant was under the influence of the event, and that the statement must have referred to the startling event. 4 J. Weinstein & M. Berger, Weinstein's Evidence at 803–85 (1985). *E.g., David By Berkeley v. Pueblo Supermarket of St. Thomas,* 740 F.2d 230 (3d Cir.1984); *Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d 1050 (6th Cir.1983), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984).

The excited utterance exception proceeds upon the assumption that a guarantee of reliability surrounds statements made by one who participates in or observes a startling event, provided they are made while under the stress of excitement. *See, e.g., State v. Ray,* 171 W.Va. 383, 298 S.E.2d 921 (1982); *State v. Young,* 166 W.Va. 309, 273 S.E.2d 592 (1980). Where a statement is made spontaneously while the declarant's ability to reflect is held in abeyance, the possibility of intentional falsehood is greatly minimized.[6] This circumstantial guarantee of truthfulness is deemed to be an adequate substitute for the denial of the right of cross-examination.

Prior to the adoption of our Rules of Evidence, we recognized this exception. In Syllabus Point 2 of *Young,* we elaborated at some length on the requirements designating this exception as a spontaneous declaration:

"An alleged spontaneous declaration must be evaluated in light of the following factors: (1) The statement or declaration must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation; and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made."

*See also* Syllabus Point 1, *State v. Ray, supra;* Syllabus Point 5, *Bowman v. Barnes,* 168 W.Va. 111, 282 S.E.2d 613 (1981); *Lawrence v. Nelson,* 145 W.Va. 134, 113 S.E.2d 241 (1960).

---

ed. 1984); 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 803(1)[1] (1985).

**5.** At common law, this exception to the hearsay rule was often placed under the *res gestae* exception. McCormick on Evidence § 297 (3d ed. 1984). This statement is made in F. Cleckley, Handbook on Evidence for West Virginia Lawyers 501 (2d ed. 1986): "[T]here is little difference contemplated in application between Rule 803(2) and the pre–WVRE 803(2) rule."

**6.** Several commentators have noted, however, that a person's powers of observation may be distorted by his excited state and thus be inaccurate even though he believes his observations to be accurate. McCormick on Evidence § 297 (3d ed. 1984); 4 J. Weinstein & M. Berger, Weinstein's Evidence at 803–86 (1985).

We indicated in both *Ray* and *Young* that our syllabus point on the spontaneous declaration exception came from the text of *Ward v. Raleigh County Park Bd.*, 143 W.Va. 931, 105 S.E.2d 881 (1958). The *Ward* rule does not appear to reflect our prior law,[7] but instead adopts a more elaborate test contained in *Beck v. Dye*, 200 Wash. 1, 92 P.2d 1113 (1939).[8] There is a certain amount of redundancy in our summary of the spontaneous declaration, as factors four and five contained in the Syllabi of *Ray* and *Young* contain duplicate statements that the declaration cannot result from deliberation or design. The term "spontaneous" or "excited" utterance would automatically exclude the element of deliberateness so that it would hardly seem necessary to express such an exclusion.

We believe that Rule 803(2), W.V.R.E., correctly contains the heart of the hearsay exception that we formerly called a spontaneous declaration and which is now termed the excited utterance exception to the hearsay rule. Certainly, the more detailed treatment of this exception contained in Syllabus Point 2 of *Young* is helpful to further refine the contours of the rule.

■ We conclude that Mrs. Wright's statement to the effect that "Junior and Slim [were] drinking and fighting" was properly admitted as an excited utterance. From Mrs. Smith's description of Mrs. Wright's tone of voice and speech, she was considerably agitated and disturbed. She stated that she wanted Mrs. Smith to have someone get her out of the house. Of some importance is the fact that Mrs. Smith testified that she heard shouting in the background.

The chief argument against admissibility under Rule 803(2) is that the witness, Mrs. Smith, was not present at the exciting event along with Mrs. Wright. We are not aware of any requirement that the witness who hears an excited declaration must also be present at the exciting event although this may frequently occur. The veracity of the declaration is not founded upon the witness's participation in the event, but upon the participation of the declarant.

■ In several cases, we have indicated without any elaborate discussion that a witness who testifies about an excited utterance of a third person need not be present at the exciting event as a condition for its admissibility. *State v. Persinger*, 169 W.Va. 121, 141, 286 S.E.2d 261, 273 (1982); *State v. Mahramus*, 157 W.Va. 175, 200 S.E.2d 357 (1973); F. Cleckley, Handbook on Evidence for West Virginia Lawyers at 501 (2d ed. 1986). In both of these cases, the victim of a sexual assault, while still under the shock of the event, stated that she had been raped and named her assailant. The witnesses who testified as to these statements were not present during the assaults. It is generally recognized elsewhere that a witness need not be present at the exciting event in order to testify as to the out-of-court declarant's excited utterance. *E.g., State v. Bult*, 351 N.W.2d 731 (S.D.1984) (statements by kidnap victim to her mother regarding her abductor); *Cunningham v. Hodges*, 150 Ga.App. 827, 258 S.E.2d 631 (1979) (statement by janitor to fire investigator that apartment fire began while attempting to burn cobwebs with torch); *People v. Robertson*, 43 Ill.App.3d 143, 1 Ill.Dec. 898, 356 N.E.2d 1180 (1975) (statements by stabbing victim to passers-by describing assailant); *see generally* 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 803(2)[01] (1986); Annot., 89 A.L.R.3d 102 (1979) (complaints to third parties by victims of sex crimes); Annot., 4 A.L.R.3d 149 (1965) (accusatory statements by homicide victims); Annot., 78 A.L.R.2d 300 (1961) (utterances by bystanders overheard by third parties).

Of some additional concern is whether there has to be independent proof of the existence of the exciting event that brings

---

7. *Ward* cited *Starcher v. South Penn Oil Co.*, 81 W.Va. 587, 95 S.E. 28 (1918); *State v. Prater*, 52 W.Va. 132, 43 S.E. 230 (1902); *Sample v. Consolidated Light & Ry. Co.*, 50 W.Va. 472, 40 S.E. 597 (1901).

8. Washington has adopted uniform rules of evidence patterned after the federal rules and has to a considerable degree diminished the *Beck* rule restrictions for excited utterances. *State v. Slider*, 38 Wash. App. 689, 688 P.2d 538 (1984).

about the statement or whether the declarant's own statement is sufficient if it refers to the exciting event. F. Cleckley, *supra* at 501. We indicated in *Collins v. Equitable Life Ins. Co.*, 122 W.Va. 171, 8 S.E.2d 825 (1940), that the statement itself may carry sufficient indicia of the exciting event. *Collins* involved a double indemnity death benefit claim. In order to recover, an accidental death had to be proved.

Claim was made that the deceased died after suffering a fall. The only proof of the fall was a statement he made to a coworker when he arrived at work that he had fallen on the way to work. He was considerably agitated at the time he made this statement. We held that the statement was admissible and that it proved the exciting event.[9]

Here, the witness, Mrs. Smith testified as to Mrs. Wright's agitated voice, the latter's reference to a fight occurring in her presence, and that she heard the sounds of voices shouting in the background. This was sufficient proof of the existence of the exciting event, i.e., the fight. We conclude that Mrs. Smith's testimony with regard to Mrs. Wright's statements was admissible.

■ Another statement by Edna Wright was related by a paramedic. Shortly after their arrival at the scene, the paramedics spoke with Mrs. Wright about the circumstances of the shooting. She said that the defendant had been involved in an argument with the deceased, that she had heard no gunshots, and that she had learned Mr. Wright was dead only when trying to wake him. She also said that the defendant had asked earlier in the day if she wanted him to shoot the deceased. Testimony regarding these various statements was admitted, following a voir dire examination of one of the paramedics, under the excited utterance exception.

■ Although the defendant initially objected to these statements at an *in camera* hearing, we believe he waived his objection when on cross-examination of Kenny Chastain, one of the paramedics, he introduced and read to the jury Mr. Chastain's lengthy written statement which contained the same information. It is generally held that where a party objects to incompetent evidence, but subsequently introduces the same evidence, he is deemed to have waived his objection. *E.g., People v. Haywood*, 60 Ill.App.3d 236, 17 Ill.Dec. 329, 376 N.E.2d 328 (1978), *cert. denied*, 440 U.S. 948, 99 S.Ct. 1427, 59 L.Ed.2d 637 (1979); *State v. LaVe*, 174 Mont. 401, 571 P.2d 97 (1977); *State v. Smith*, 290 N.C. 148, 226 S.E.2d 10, *cert. denied*, 429 U.S. 932, 97 S.Ct. 339, 50 L.Ed.2d 301 (1976); *Curry v. State*, 468 S.W.2d 455 (Tex.Cr.App.1971), *vacated in part on other grounds*, 408 U.S. 939, 92 S.Ct. 2872, 33 L.Ed.2d 761 (1972); *Saunders v. Commonwealth*, 211 Va. 399, 177 S.E.2d 637 (1970); 75 Am. Jur.2d *Trials* § 174 (1974).

■ The waiver question is not without some qualification in the context of cross-examination. Courts have recognized that a party objecting to evidence which is claimed to be inadmissible may cross-examine to further undermine its evidentiary basis without waiving his initial objection. This was clearly explained in *State v. Wells*, 52 N.C.App. 311, 315, 278 S.E.2d 527, 530 (1981): "[I]t is also true that one does not waive an objection, otherwise sound and seasonably made, by attempting to explain or destroy the probative value of the evidence on cross-examination." (Citations omitted). Here, the cross-examination consisted of going over the initial statement of Mr. Chastain with no attempt to undermine or have explained the testimony of Mrs. Wright in those few areas where she made adverse comments against the defendant.[10]

---

**9.** The single Syllabus of *Collins* states: "When appearances indicate that one has suffered an injury, a statement by him, if spontaneous and reasonably coincident with, and explanatory of, the occurrence, may be regarded as part of it and be competent evidence under the doctrine of res gestae."

**10.** The primary thrust of the cross-examination was the time sequence of two remarks of Edna Wright made to the defendant in the presence of the paramedics. Neither of these remarks was particularly inculpatory. The defendant in his testimony denied making these statements.

## B.

### STATEMENTS OF SHELDON WRIGHT

The State introduced two statements made by the victim. One was made to Marcella Cremeans who was acquainted with him and who testified that on the day before his death, Mr. Wright came into the drive-in where she worked. He had her count the money in his wallet and then stated that the defendant had struck him and taken $100 from him.

A second statement was made to a Huntington police dispatcher, who testified from a telephone log that he kept as a regular part of the department's records. It revealed that a Sheldon Wright had called on June 24, 1983, at 3:00 p.m. to complain that a "Russell" Smith had taken a red Buick Opel from his residence. He identified Mr. Smith as his stepson and indicated there was also a gun missing. He stated that he was not going to press charges, but if Mr. Smith returned to the house and started to beat him up that he would shoot him. The officer testified that Mr. Wright's speech was slurred and he "could tell he was an elderly man." [11]

■ As to the testimony of the police dispatcher, there was no objection made regarding its inadmissibility. The only comment made by defense counsel was that he had not been advised the witness would be called until that morning. Coun-sel did admit that he had prior knowledge of the telephone log. On appeal, the only claim made is that the evidence was inadmissible hearsay. Without an objection below, the rule stated in Syllabus Point 9 of *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986), applies:

"Our general rule is that nonjurisdictional trial error not raised in the trial court will not be addressed on appeal."

*See also State v. Manns*, 174 W.Va. 793, 798, 329 S.E.2d 865, 871 (1985); Syllabus Point 7, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974).

The testimony of Ms. Cremeans was objected to on hearsay grounds and the court appeared to admit the testimony under the general catch-all exception to the hearsay rule. Rule 804(b)(5).[12] We do not believe that this testimony fitted that narrow exception.

■ It is generally recognized from the language of Rule 804(b)(5) and its counterpart in Rule 803(24) that five general factors must be met in order for hearsay evidence to be admissible under the rules. First and most important is the trustworthiness of the statement, which must be equivalent to the trustworthiness underlying the specific exceptions to the hearsay rule. Second, the statement must be offered to prove a material fact. Third, the statement must be shown to be more pro-

---

**11.** No objection was made as to the authenticity of the phone call. *See* note 3, *supra.* The police dispatcher did not say he recognized Mr. Wright's voice. However, there was corroborative evidence to indicate that Mr. Wright had placed the call since the defendant admitted in his testimony that he had taken the deceased's red Opel on the day of the shooting. A number of cases recognize that calls to emergency services can be admitted if corroborated by other evidence. *E.g., State v. Nickles*, 728 P.2d 123 (Utah 1986); *City of Kansas City v. Estill*, 717 S.W.2d 258 (Mo.App.1986).

**12.** Rule 804(b)(5), W.V.R.E., states:

"The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \* \* \*

"Other Exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it his intention to offer the statement and the particulars of it, including the name and address of the declarant."

Rule 803(24) contains the same language. Rule 804(b)(5) is designed to cover situations where the declarant may be alive, but unavailable to testify. Rule 804(a) defines "unavailability."

bative on the issue for which it is offered than any other evidence the proponent can reasonably procure. Fourth, admission of the statement must comport with the general purpose of the rules of evidence and the interest of justice. Fifth, adequate notice of the statement must be afforded the other party to provide that party a fair opportunity to meet the evidence.[13]

Taking these points in inverse order, it is apparent that the State failed to show requisite compliance with the rule. First, there is no showing that the State, at any time prior to the actual trial, disclosed the hearsay evidence it intended to offer through Ms. Cremeans as provided under Rule 804(b)(5) in order to give the defense a fair opportunity to meet this testimony. The prosecution had in its possession a written statement containing this information which had been obtained on July 16, 1983, more than a year and a half before the trial.

As to factors four, three, and two, it must be recalled that the materiality of Ms. Cremeans' testimony was only on a subsidiary issue, that of a collateral crime under Rule 404(b), i.e., that the defendant had shortly before the homicide assaulted the deceased and had taken $100 from him. As we have earlier indicated, such a fact may be relevant to prove malice, motive, and criminal intent. We have consistently held, however, that evidence of a collateral crime is admissible only for limited purposes and is not to be regarded as proof of the commission of the offense charged. *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208, 216 (1986); *State v. Pancake*, 170 W.Va. 690, 693, 296 S.E.2d 37, 41 (1982).

Courts that have evaluated factors four, three, and two generally conclude that

where evidence is offered under Rule 804(b)(5), which is not crucial to a material issue in the case, its materiality and probative value are reduced and the ends of justice are not served by its admission. This is particularly true in criminal cases, where there is a strong preference for live testimony. *United States v. Cain*, 587 F.2d 678 (5th Cir.), *cert. denied*, 440 U.S. 975, 99 S.Ct. 1543, 59 L.Ed.2d 793 (1979); *United States v. Mathis*, 559 F.2d 294 (5th Cir.1977); *United States v. Yates*, 524 F.2d 1282 (D.C.Cir.1975); *Schmunk v. State*, 714 P.2d 724 (Wyo.1986).

With regard to the first factor, trustworthiness, we do not believe that the State's simple assertion that the declarant, Mr. Wright, had no reason to lie is a sufficient indicator of trustworthiness. There was no corroborative evidence to support what amounts to a bare assertion that the defendant had stolen the $100. There was nothing in the deceased's statement that supplied any detail about the time of the alleged theft or about its circumstances which would give it verisimilitude. *See United States v. Thevis*, 84 F.R.D. 57 (N.D.Ga.1979), *aff'd on other grounds*, 665 F.2d 616 (5th Cir.), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982). It can hardly be said that the deceased was without bias toward the defendant at the time the statement was made as there was a history of antagonism between them which may bear on its trustworthiness. *See United States v. Mandel*, 591 F.2d 1347 (4th Cir.1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980).

Moreover, as we pointed out in *Naum v. Halbritter*, 172 W.Va. 610, 309 S.E.2d 109 (1983), where we discussed what amounted to a Rule 804(b)(5)[14] issue, there can exist a

---

**13.** *See generally* Syllabus Point 3, *State v. Ashcraft*, 172 W.Va. 640, 309 S.E.2d 600 (1983); Syllabus Point 2, *State v. Williams*, 162 W.Va. 348, 249 S.E.2d 752 (1978); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* at 803-377, *et seq.* (1985).

**14.** *Naum* was decided before the adoption of the Rules of Evidence which became effective on February 1, 1985. It followed Syllabus Point 2 of *State v. Williams, supra,* where we adopted as

a common law rule of evidence the equivalent of Rules 803(24) and 804(b)(5):

"Hearsay evidence which is against the penal interest of the extra judicial declarant is admissible even though it does not fall within a recognized West Virginia exception to the hearsay rule if it possesses sufficient indicia of reliability to satisfy the court that it is trustworthy in accordance with the following rule:

Sixth Amendment right of confrontation problem notwithstanding the fact that not all hearsay exceptions violate the Confrontation Clause:

"In *California v. Green*, 399 U.S. 149, 156, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 [495–96] (1970), the Supreme Court stated, '[M]erely because evidence is admitted in violation of a long established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied.' Nevertheless we do believe that where *the* crucial witness for the prosecution will be unavailable for any form of cross-examination a serious constitutional issue exists. Indeed in *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Supreme Court allowed the use of an out of court admission only after noting that the evidence presented was tangential to the central issue in the case and that the evidence was heavily corroborated." 172 W.Va. at 615, 309 S.E.2d at 114. (Emphasis in original).·

In *Naum*, we concluded that the attempted use of hearsay statements which constituted the heart of the prosecution's case and which were not admissible under any traditional exception could not be admitted under a general catch-all provision analogous to Rule 804(b)(5).

We emphasize in closing that Rules 803(24) and 804(b)(5) cannot be viewed as an open door to thrust hearsay statements into a trial. Here, the State failed to show compliance with the requisite factors embodied in Rule 804(b)(5).

■ Even though we find that error was committed in the introduction of Ms. Cremeans' statement, we do not find this to be reversible error under Syllabus Point 2 of *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980):

'A statement has circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.

"Where improper evidence of a non-constitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury."

*See also State v. Thompson*, 176 W.Va. 300, 306, 342 S.E.2d 268, 274–75 (1986); *State v. Tanner*, 171 W.Va. 529, 533, 301 S.E.2d 160, 164 (1982); *State v. Church*, 168 W.Va. 408, 414–15, 284 S.E.2d 897, 902 (1981).

Under the analysis adopted in *Atkins*, we must first determine whether there was sufficient evidence—absent the improperly admitted evidence—to sustain a conviction. We believe sufficient evidence to convict was presented. All of the circumstantial evidence pointed to a homicide. When the body was discovered, no weapon was observed. Later, a handgun was retrieved which had been secreted in an adjoining room. A ballistics test showed that the fatal bullet had markings consistent with having been fired from this gun. Finally, and most convincingly, the medical examiner concluded on the basis of the autopsy that the fatal wound could not have been self-inflicted.

That the defendant had committed the crime was also ably demonstrated, particularly by the testimony of Ms. Underwood. She testified that immediately prior to the

However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.' "

shooting, the defendant and the deceased had been arguing about money, thereby providing a motive for the killing. Her testimony also proved both means and opportunity. The defendant was in the house when the shots were fired and Mrs. Wright's exclamation seconds later implicated him. We believe this evidence, both direct and circumstantial, was sufficient to prove guilt beyond a reasonable doubt under Syllabus Point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

We also are of the view that the improper evidence was not sufficiently prejudicial to warrant reversal as required by *Atkins*. In that case, we touched on several factors that bore on the prejudicial effect of the inadmissible evidence. We considered whether the evidence was critical testimony of the defendant or was only tangential to the issue of guilt. Also considered was whether special or repeated emphasis had been made by the prosecution with regard to the inadmissible evidence.

In the present case, the statement, as we have previously indicated, was extremely conclusory and bore only on a collateral issue, a prior taking of money from the deceased by the defendant. It was not given any special or repeated emphasis by the prosecution. Taken in the entire context of the trial, we find the admission of this evidence not to be reversible error.

## II.

### OTHER ERRORS

#### A.

As earlier noted, the defendant's girlfriend, Nancy Underwood, who was present at the shooting, gave damaging testimony against the defendant as a State's witness. She had given a written statement to the investigating officer. Prior to the trial, the defendant's counsel obtained two statements from her, one by his investigator and another at his office. In these statements, she denied having knowledge of the event. She claimed that she had been asleep in a car for most of the evening and only learned about the shooting when she was awakened by the investigating police officers. On cross-examination, she admitted these prior statements were true. The State on rebuttal went over its earlier statement with her and she basically confirmed her direct testimony.

■ The defense on cross-examination attacked the credibility of Ms. Underwood in other ways. It was demonstrated that she had been subject to memory losses after having sustained a traumatic head injury in a 1957 automobile accident. She also had a hearing impairment and had been drinking extensively prior to the shooting. The defendant argues that these factors cumulatively rendered Ms. Underwood incompetent to testify. However, no motion was made as to this point until after trial and we believe the failure to make a timely objection resulted in a waiver under Syllabus Point 9 of *State v. Humphrey*, *supra*.

We also recognized in *Humphrey*, 177 W.Va. at 271, 351 S.E.2d at 619, the difference between competency and credibility and quoted F. Cleckley, *supra* at 25: " 'Competency differs from credibility. The former is a question that arises before considering the evidence given by the witness; the latter concerns the degree of credit to be given to his testimony. The former denotes the personal qualifications of the witness; the latter his veracity.' "

■ The few courts that have had occasion to discuss this point set an extremely high standard to exclude a witness's testimony, as illustrated by *United States v. Lerma*, 657 F.2d 786, 789 (5th Cir.1981),

*cert. denied*, 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 463 (1982): "Only when testimony is so unbelievable on its face that it defies physical laws should the court intervene and declare it incredible as a matter of law." *Coleman v. United States*, 515 A.2d 439, 444 (D.C.App.1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 205 (1987), added another consideration that the testimony be deemed "highly questionable in the light of common experience and knowledge." [15]

The reason for refusing to declare testimony incredible as a matter of law is the strong policy of having disputed issues of fact resolved by a jury. In *Humphrey*, the judge expressed disbelief over the witness's testimony and stated he thought the witness had lied. He refused to strike the witness's testimony. We concluded that it was not sufficiently incredible to reverse his ruling. We conclude that the same result obtains in this case.

### B.

■ The defense claims that the State failed to outline a prima facie case in its opening statement to the jury. The primary purpose of an opening statement is to give a preview of each side's view of the case. Counsel's remarks are not evidence. There are cases which acknowledge that in certain rather extraordinary situations, a judgment of acquittal can be granted, but if such a motion is made, the prosecution is entitled to make a supplemental statement.[16] From a review of the record, we view the prosecutor's statement, although abbreviated, to be sufficient. *See generally* Annot., 75 A.L.R.3d 649 (1977); 75 Am. Jur.2d *Trials* §§ 505, *et seq.* (1974).

### C.

■ The defense next claims that the State improperly admitted a rifle and a .22 caliber Luger found at the deceased's house because neither could be connected to his death. We find from the record that Trooper Lane did connect the .22 caliber Luger as having land and groove marks similar to the bullet that killed the deceased. We also reject the defense's claim that Ms. Underwood's reference to a third gun, a pearl handled revolver, was designed to prejudice the defendant. This confusion was engendered in part by the defendant's testimony that he had never seen such a gun at the house. It was never found and no one could identify the caliber of the gun.

### D.

■ The defendant urges several instructional errors. The claim is made that State's Instruction No. 3, which dealt generally with the role of circumstantial evidence, was inadequate. It provided that circumstantial evidence would support a verdict of guilty if "as to time, place, means and conduct ... [it] concurs in pointing to the defendant as the perpetrator of the crime." This was preceded by the customary language that such circumstantial evidence must establish guilt to the exclusion of every reasonable hypothesis of innocence. This quoted language has been repeatedly approved by this Court in similar circumstantial evidence instructions. *E.g., State v. Phillips*, 176 W.Va. 244, 342 S.E.2d 210 (1986); *State v. Gum*, 172 W.Va. 534, 309 S.E.2d 32 (1983); *State v.*

---

15. The district court in *United States v. Smith*, 592 F.Supp. 424, 440–41 (E.D.Va.1984), *vacated on other grounds and remanded*, 780 F.2d 1102 (4th Cir.1985), gave an excellent discussion of this doctrine. It recognized that there may be a Sixth Amendment constitutional problem in applying the rule to a defense witness, and concluded:

> "While the cases recognize the doctrine in theory, they almost uniformly refuse to hold the challenged testimony unbelievable as a matter of law. *E.g., U.S. v. Rodriguez*, 702 F.2d 38, 43 (2d Cir.1983); *U.S. v. Shulman*,

624 F.2d 384, 388 (2d Cir.1980); *U.S. v. Strahl*, 590 F.2d 10, 12 (10th Cir.1978); *U.S. v. Duhon*, 565 F.2d 345 (5th Cir.1978); *U.S. v. Cravero*, 530 F.2d 666, 670 (5th Cir.1976); *Lyda v. U.S.*, 321 F.2d 788, 794–95 (9th Cir. 1963); *Haakinson v. U.S.*, 238 F.2d 775 (8th Cir.1956); *U.S. v. Narciso*, [446 F.Supp. 252 (E.D.Mich.1977) ]."

16. We have recognized this rule in a civil case in Syllabus Point 1 of *Alexander v. Jennings*, 150 W.Va. 629, 149 S.E.2d 213 (1966), but stated "this authority should be exercised cautiously and only in a clear case."

*Meadows,* 172 W.Va. 247, 304 S.E.2d 831 (1983). We find this instruction to be proper.

In addition, the defendant objected to the trial court's refusal to give a number of defense instructions. We find no error in the action of the court and will only briefly address each of the proffered instructions.

Defendant's Instruction No. 10 would have instructed the jury that to sustain a guilty verdict the defendant must have intended the particular consequences of his acts. This instruction was not tied to any facts of the case or any acts of the defendant. It was too abstract and did not provide any meaningful guidance to the jury regarding the "acts" or "consequences" to which it referred. We have held that an abstract instruction which is not connected to the evidence and is thereby confusing need not be given. *E.g., State v. Harris,* 169 W.Va. 150, 286 S.E.2d 251 (1982); *State v. Starr,* 158 W.Va. 905, 216 S.E.2d 242 (1975); *State v. Cantor,* 93 W.Va. 238, 116 S.E. 396 (1923).

The trial court also refused to give Defendant's Instruction No. 11, which defined acting in an "unlawful manner" as "specifically intend[ing] to commit [the] act without legal justification." As the State correctly points out, this was in effect an instruction on self-defense. There was no evidence nor defense contention of a theory of self-defense. The instruction was properly refused.

Defendant's Instruction No. 28 would have advised the jury that before it could consider as evidence of guilt the statements of Mrs. Wright that were inculpatory of the defendant, such statements had to be unambiguous and the defendant must have been provided an opportunity to deny them. This would be true if they were utilized as a tacit admission of guilt by the defendant's failure to deny. *State v. Robinson,* 97 W.Va. 691, 127 S.E. 46 (1924); F. Cleckley, *supra* at 474–79. However, the statements were ambiguous and the State did not urge that they constituted a tacit admission of guilt by the

defendant. The instruction was, therefore, appropriately refused.

Defendant's Instruction No. 29 stated that testimony by a witness "for pay, or for immunity from punishment, or for personal advantage or vindication" must be weighed with great care. This instruction was overbroad, as none of the witnesses called by the State were paid or immunized. Further, the aspect of personal advantage or vindication was adequately covered by the general credibility instruction which allowed the jury to consider "the interests and desires of the witness in the outcome of the case." There was no error in its refusal.

A similar instruction, Defendant's Instruction No. 30, was based upon Syllabus Point 2 of *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980). It would have instructed the jury that the uncorroborated testimony of an accomplice must be reviewed with caution. Even if we assume that *Vance* is applicable to hearsay statements by a deceased coindictee, the statements here involved were adequately corroborated by physical evidence and by the testimony of Ms. Underwood.

Finally, Defendant's Instruction No. 36 provided that the jury was not required to accept the conclusion of the medical examiner regarding the manner of death of the victim. Such an instruction misperceives the law. As we discussed above, the testimony of the medical examiner was properly admitted and was the only medical testimony relating to the manner and cause of death. The defendant was not entitled to an instruction that the jury may simply disregard proper opinion testimony.

E.

The defendant also contends that he was prejudiced by the admission of Edna Wright's hearsay statements because he was surprised and, therefore, unable to produce other witnesses who overheard statements by Mrs. Wright which were exculpatory of the defendant. The defendant does not indicate in his brief what testimony could have been produced. In view of

this, we decline to consider this ground of error.

■ It is also contended that the evidence of premeditation was inadequate as a matter of law. We do not agree. We held in *State v. Farley*, 125 W.Va. 266, 272, 23 S.E.2d 616, 620 (1942), that premeditation "does not involve as a necessary element a ·constant purpose for a definite length of time." *See also State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982). The telephone call by Mrs. Wright, coupled with the testimony of Ms. Underwood, clearly reveals that the defendant and the deceased were involved in an argument prior to the shooting. There was evidence of prior animosity between the defendant and the deceased including Mrs. Wright's statement that he offered to kill the deceased earlier on the day of the shooting. We believe the jury was presented with adequate evidence from which to find premeditation.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.