# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

June 13, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)   No. 13-0780** (Fayette County 13-F-83)

**John S.,**
**Defendant Below, Petitioner**

### MEMORANDUM DECISION

Petitioner John S.[1], by counsel Lori M.P. Waller, appeals the Circuit Court of Fayette County's sentencing order entered on July 3, 2013. The State of West Virginia, by counsel Christopher S. Dodrill, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner married his wife, Candace, in November of 2010, and the couple lived with petitioner's ten-year-old son, D.S., and Candace's nine-year-old niece, N.L., over whom she had guardianship. Petitioner and his wife had a child together, born on February 12, 2011.

Petitioner was accused of sexually abusing N.L., beginning within weeks of him moving into Candace's home. N.L. later testified that she was sexually abused and assaulted by petitioner nearly daily after school. She testified that petitioner would lock D.S. in his room and then sexually assault her. D.S.'s statements corroborated her testimony, indicating that the bedroom doors in their home had the lock on the outside of the door and that, at times, his father would lock him in his room. D.S. also testified that N.L. disclosed to him that petitioner had touched her private area.

On January 9, 2013, petitioner was indicted on the following twenty counts: nine counts of sexual assault in the first degree, stemming from his alleged insertion of his penis into N.L.'s

---

[1] Due to the sensitive facts involved in this case, we refer to petitioner and the other involved parties by their initials. *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

vagina, from June of 2010 through February of 2011; nine counts of sexual abuse by a parent, guardian, custodian or person in a position of trust to a child due to the alleged assaults against N.L.; one count of sexual abuse in the first degree for allegedly touching the penis of D.S.; and, one count of sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child for allegedly touching the penis of D.S. The counts regarding D.S. were severed, and the trial in the instant case was based only on the allegations regarding N.L.

The case went to trial on May 15 and 16, 2013. N.L. testified at trial, as did D.S. Medical evidence was presented by experts for both the State and the defense. Dr. Sharon Istfan testified for the State, noting her finding of thickening around N.L.'s anus due to chronic irritation, which is consistent with sexual abuse. There was no visible vaginal damage, but Dr. Istfan testified that this is not unusual, as less than five percent of sexual assault victims examined a year after the alleged crime would show residual damage as that area would have healed. Dr. Stephen Guertin testified for the defense, stating that N.L.'s physical examination was not consistent with her allegations. Dr. Guertin indicated that a child of N.L.'s age would have had significant injury from vaginal penetration, which was not present here. Both petitioner and his wife testified that petitioner was not present in or living in the home during some of the period he was alleged to have abused N.L. Both also denied the allegations, and alleged that petitioner had little access to the child alone, as Candace worked only part time and was on bedrest and maternity leave during some of the period the abuse allegedly occurred.

During deliberations, the jury asked for clarification on the meaning of the word "penetration," or what constitutes sexual assault in the first degree. In response, the judge reread the jury instruction to them. Approximately thirty minutes later, the jury reached its verdict, finding petitioner guilty on all counts. The court held a hearing on post-trial motions, including a motion for new trial, and sentencing on July 2, 2013. All of petitioner's motions were denied, and he was sentenced to an aggregate sentence of ninety-five to three hundred forty years of incarceration.

Petitioner appeals from his sentencing order. "'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syl. Pt. 1, in part, *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. Pt. 1, *State v. James,* 227 W.Va. 407, 710 S.E.2d 98 (2011).

On appeal, petitioner first argues that the verdict was against the weight of the evidence since N.L. claimed that the acts occurred at times when petitioner was not even present in the home. He further argues that there was no physical evidence to support the child victim's claims of sexual assault. Petitioner states that the child exhibited confusion in her testimony as to time and place, and even testified that petitioner had moved into the home earlier than he actually did. Additionally, petitioner argues that neither the State's expert nor the expert for the defense found physical injury consistent with vaginal penetration. Petitioner contends that the lack of physical findings combined with the confusion in the child's testimony make her testimony inherently incredible and, thus, his conviction should be overturned.

2

Petitioner is, in essence, challenging the sufficiency of the evidence. This Court has found:

> "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. pt. 3, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 2, *State v. McFarland,* 228 W.Va. 492, 721 S.E.2d 62 (2011); Syl. Pt. 7, *State v. White,* 228 W.Va. 530, 722 S.E.2d 566 (2011).

This Court finds that sufficient evidence was presented to support the convictions. This Court has stated that "a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *State v. Guthrie*, 194 W.Va. 657, 669-70, 461 S.E.2d 163, 175-76 (1995). To obtain convictions on the charges for sexual assault in the first degree, the State had to prove that petitioner was at least fourteen years old, that he engaged in sexual intercourse or intrusion with N.L., and that N.L. was younger than twelve years old at the time. W.Va. Code § 61-8B-3(a)(2). To obtain convictions on the charges of sexual abuse by a parent, guardian, or custodian, the State had to prove that petitioner sexually exploited or abused N.L. and that he did so while she was under his care, custody, or control. W.Va. Code § 61-8D-5(a). The State introduced evidence to support each of these elements through the testimony of N.L. N.L. testified that petitioner sexually abused her "every day" after she came home from school, stating that he "put his private in my private." Thus, the evidence was sufficient to sustain petitioner's conviction.

As to petitioner's contention that the child's testimony was not credible, this Court has found as follows:

> As we have cautioned before, appellate review is not a device for this Court to replace a jury's finding with our own conclusion. On review, we will not weigh evidence or determine credibility. Credibility determinations are for a jury and not an appellate court. On appeal, we will not disturb a verdict in a criminal case unless we find that reasonable minds could not have reached the same conclusion.

*Guthrie*, 194 W.Va. at 669, 461 S.E.2d at 175. The jury found the child's testimony credible, as evidenced by the verdict. Therefore, this Court will not disturb the verdict.

Next, petitioner argues that the trial court violated the Rules of Evidence by admitting hearsay evidence, including the child victim's letter to her guardian and her written interview answers, because admission of such evidence caused the jury to consider unreliable evidence in reaching its verdict. Petitioner relies on *State v. Kaufman,* 227 W.Va. 537, 711 S.E.2d 607 (2011), arguing that the statements were inadmissible as being unfairly prejudicial. "'"Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." *State v. Louk*, 171 W.Va. 639, 643, 301 S.E.2d 596, 599 (1983).' Syllabus Point 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983)." Syl. Pt. 1, *State v. Pettrey*, 209 W.Va. 449, 549 S.E.2d 323 (2001).

This Court has set forth the following standard regarding the admission of hearsay evidence:

> The language of Rule 804(b)(5) of the West Virginia Rules of Evidence and its counterpart Rule 803(24) requires that five general factors must be met in order for hearsay evidence to be admissible under the rules. First and most important is the trustworthiness of the statement, which must be equivalent to the trustworthiness underlying the specific exceptions to the hearsay rule. Second, the statement must be offered to prove the material fact. Third, the statement must be shown to be more probative in the issue for which it is offered than any other evidence the proponent can reasonably procure. Fourth, admission of the statement must comport with the general purpose of the rules of evidence and the interest of justice. Fifth, adequate notice of the statement must be afforded the other party to provide that party a fair opportunity to meet the evidence. Syl. Pt. 5, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987).

Syl. Pt. 6, *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). As to the written statements N.L. wrote during the forensic interview, these were used not to show the truth of the matter asserted, but to show why the Child Protective Services worker acted in removing the child from the home and why an investigation was undertaken. As to the letter N.L. wrote to her guardian, this letter was admissible under the "catch-all" exception, and meets all five of the factors set forth in *Edward Charles L.* Moreover, this Court has found that when the author of a document alleged to be hearsay is available to testify at trial, the evidence is more likely to be found admissible: "[n]ot only are hearsay dangers minimized by the presence of the declarant, but such appearance removes potential confrontation clause issues as well." *Id.* at 656, 398 S.E.2d at 138.

Even if the alleged hearsay evidence was improperly admitted, the error was harmless. This Court has stated:

> "'Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining

4

evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.' Syllabus Point 2, *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert denied*, 445 U.S. 904, 100 S.Ct. 1081, 63 L.E.2d 320 (1980)"; Syl. Pt. 3, *State v. Maynard*, 183 W.Va. 1, 393 S.E.2d 221 (1990) (quoting Syl. Pt. 6, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987)).

Syl. Pt. 3, *id.* Even without the evidence petitioner alleges was improper, there is sufficient evidence to find petitioner guilty. N.L. testified regarding the abuse, and some of her allegations were supported by statements made by D.S. As stated above, the jury determined that N.L.'s testimony was credible. The jury also heard testimony from experts for the State and for the defense. The alleged error did not have any prejudicial effect on the jury, as the same evidence was elicited from the examination and cross-examination of N.L. Thus, we find no error in the admission of this alleged hearsay evidence.

Petitioner's final assignment of error is that he did not receive a fair trial because the lower court failed to disqualify a juror despite her previous relationship with petitioner. Petitioner states that his ex-wife's cousin was a member of the jury, and that she was prejudiced against him because the ex-wife had accused him of abuse. Petitioner moved for a new trial, and one basis of this motion was that this juror was prejudiced against him. He admits that he did not inform his attorney that he knew the juror until "a couple days" after his trial ended, although he had previously socialized with her, attended church with the juror, and the juror attended his wedding. He stated that he did not "hardly look over at the jury" during the entirety of his trial, and thus only noticed the juror after the verdict.

The court denied the motion, explaining:

The Court, based on this evidence, concludes that the defendant, by his words, 'hardly looking at the jury during jury selection,' did so at his peril. The purpose of having a public jury selection is to display this jury panel to the Defendant and his lawyer during the process of selection. And it is beyond reasonable comprehension to believe that a person who attended the Defendant's wedding and with whom he socialized at church for a year or more he would not recognize here in Court.

This Court has stated that "[i]n order to receive a new trial, a party challenging a verdict based on the presence of a juror disqualified under W.Va. Code § 52-1-8(b)(6) must show that a timely objection was made to the disqualification or that ordinary diligence was exercised to ascertain the disqualification." Syl. Pt. 4, *Proudfoot v. Dan's Marine Service, Inc*. 210 W.Va. 498, 558 S.E.2d 298 (2001). The failure to exercise diligence waived his objection to the jury. Further, petitioner cannot identify an error in this ruling, simply stating the juror should have been excused for cause. Moreover, the issue was only raised post-trial. He did not present evidence that he was diligent in assessing the members of the jury and, therefore, we find no error in the circuit court's denial of a new trial based on this assignment of error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 13, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II