# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **B.M. and K.M.**

**Nos. 19-1044 and 19-1140** (Wood County 19-JA-98 and 19-JA-99)

**FILED**
**June 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother G.M., by counsel Michele Rusen, appeals the Circuit Court of Wood County's October 11, 2019, order denying her motion for reconsideration of the termination of her parental rights and its November 6, 2019, order terminating her parental rights to B.M. and K.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's orders. The guardian ad litem, Matthew E. DeVore, filed a response on behalf of the children in support of the circuit court's orders. Petitioner filed a reply. In these consolidated appeals, petitioner argues that the circuit court erred in (1) admitting the children's videotaped interviews into evidence without making proper findings necessary for their admission, (2) denying her motion for reconsideration without holding a hearing, (3) finding that she abused and/or neglected the children, (4) and terminating her parental rights without considering a less-restrictive alternative disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner failed to provide adequate and safe housing for the children; exposed them to dangerous people, including sexual abusers; and failed to adequately supervise or parent the children due to her substance abuse. The DHHR also alleged that petitioner was a respondent in a prior proceeding

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

in 2014, after B.M. was born drug-exposed and petitioner failed to provide safe and adequate housing for the children, although she did regain custody of the children upon the petition's dismissal. Concerning the most recent allegations, the DHHR alleged that the family was homeless and living in "tent city," a well-known area considered unsafe for children, after petitioner was banned from local homeless shelters due to drug use. After law enforcement become involved, petitioner sought assistance at the local DHHR office but initially refused to tell the worker where the children were located, stating that it was "none of [the DHHR's] business." Later, petitioner returned to the DHHR office seeking economic assistance. At that time, a worker observed that petitioner was under the influence of drugs, had large sores on her face and arms, and had a large knife in her possession. The children were found waiting in the lobby with an unknown male who was petitioner's friend. The worker observed the man with the children and watched him touch his tongue to then six-year-old K.M.'s tongue, at which point the worker asked that the children be brought to another area. The worker then noticed that the man was visibly aroused and, while walking to the new area, touched tongues with B.M. in the same way he had with K.M. After reaching the new area, the worker gave a pen to B.M. who used it in a sexualized manner while looking directly at the man. The worker then asked the man to leave. After explaining to petitioner what she witnessed, petitioner did not acknowledge a problem and showed no concern. At that time, the DHHR abandoned efforts to implement a safety plan, filed the underlying abuse and neglect petition, and removed the children from petitioner's care. Thereafter, petitioner waived her preliminary hearing

A few days after their removal, the children were interviewed at the Children's Listening Place Child Advocacy Center ("CAC"). During the interview, then four-year-old B.M. described sexual abuse by a man with the same name as the man who was with the children at the DHHR office. She stated that he stayed with them in their tent and he also sexually abused an unknown baby who was sleeping in the shared tent. B.M. also described seeing a woman get shot and that petitioner attempted to help the woman but could not save her life. On May 31, 2019, the DHHR moved to admit the CAC interviews at the adjudicatory hearing in lieu of the children's testimony, but the circuit court did not rule on the motion at that time.

Adjudicatory hearings were conducted on August 9 and August 30, 2019. Petitioner failed to appear at either hearing, but counsel represented her. Petitioner's counsel indicated that she did not know petitioner's whereabouts. The DHHR presented the testimony of a CAC forensic interviewer, and petitioner did not object to her qualifications as an expert witness in child forensic interviewing. The DHHR then moved to admit the recorded CAC interviews of the children, to which petitioner objected, arguing that there was insufficient evidence to prove the credibility, reliability, and trustworthiness of the interviews. After reviewing the CAC interviews in camera, the circuit court admitted them.[2] The circuit court explicitly adjudicated petitioner as an abusing parent based upon her ongoing drug abuse, not upon her lack of financial resources.

---

[2]The circuit court did not issue specific findings setting forth its reasoning for admitting the CAC interviews but indicated that it would enter a separate order with findings on a later date. However, no such order was entered.

Petitioner then moved for a post-adjudicatory improvement period, and the circuit court held the motion in abeyance.

In October of 2019, the circuit court held a final dispositional hearing. Petitioner again failed to appear, but counsel represented her. The DHHR then moved to terminate petitioner's parental rights and explained that it offered services to petitioner during the proceedings, but she failed to participate or otherwise communicate with the DHHR. Petitioner's counsel reported that she had not had contact with petitioner since July 12, 2019, and added, "while I object to the termination, I have no factual or legal basis to do so." The circuit court took judicial notice of all previous evidence presented, petitioner's total absence since the beginning of the proceedings, and her failure to participate in any remedial services offered by the DHHR prior to and during the proceedings. Ultimately, the circuit court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Shortly after the dispositional hearing, petitioner contacted her counsel, who then filed a motion to reconsider the termination of petitioner's parental rights. The circuit court summarily denied the motion without a hearing by order entered October 11, 2019, finding that petitioner lacked standing to file such a motion. Petitioner appeals this order. Later, the circuit court terminated petitioner's parental rights by order entered on November 6, 2019.[3] Petitioner also appeals this final dispositional order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[3]K.M.'s unknown father's parental rights were also terminated below. B.M.'s father's parental rights were previously terminated. According to respondents, the children were placed with a foster family and the permanency plan is for the children to be adopted by the family.

First, petitioner argues that the circuit court erred in admitting the children's videotaped CAC interviews into evidence without making proper findings for their admission. According to petitioner, the interviews were not trustworthy, probative, reliable, or "necessary for the resolution of the issues in this case." We disagree.

We have set forth the following standard of review regarding questions of admissibility:

> "The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, in part, *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995).

Syl. Pt. 3, *In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014). Regarding child abuse and neglect proceedings and children's testimony, we have held that

> [u]nder Rule 8(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, there is a rebuttable presumption that the potential psychological harm to the child outweighs the necessity of the child's testimony. The circuit court shall exclude this testimony if it finds the potential psychological harm to the child outweighs the necessity of the child's testimony.

*Id.* at 394, 758 S.E.2d at 747, syl. pt. 7, in part. Notably, petitioner fails to argue against the presumption of potential psychological harm to the children should they have testified below.

In reviewing the circuit court's admission of the children's CAC interviews, we begin with the well-established rule that

> [g]enerally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

Syl. Pt. 1, *State v. Maynard*, 183 W. Va. 1, 393 S.E.2d 221 (1990). Clearly, the recorded CAC interviews in the instant matter were hearsay as they were offered to prove the truth of the matter asserted. *See* W.Va. R. Evid. 801(c). However, despite the circuit court's failure to make such specific findings, we find that the CAC interviews were properly admitted as falling under the

4

residual exceptions to the hearsay rules embodied in West Virginia Rules of Evidence Rule 807.[4] This Court has held that

> [t]he language of Rule 804(b)(5) of the West Virginia Rules of Evidence and its counterpart in Rule 803(24) [now 807] requires that five general factors must be met in order for hearsay evidence to be admissible under the rules. First and most important is the trustworthiness of the statement, which must be equivalent to the trustworthiness underlying the specific exceptions to the hearsay rule. Second, the statement must be offered to prove a material fact. Third, the statement must be shown to be more probative on the issue for which it is offered than any other evidence the proponent can reasonably procure. Fourth, admission of the statement must comport with the general purpose of the rules of evidence and the interest of justice. Fifth, adequate notice of the statement must be afforded the other party to provide that party a fair opportunity to meet the evidence. Syl. Pt. 5, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987).

*In re J.S.*, 233 W. Va. at 407, 758 S.E.2d at 760.

In looking at the first of the five factors set forth in *In re J.S.*, we find that the children's statements were trustworthy. Although petitioner claims that B.M.'s statements regarding the unknown woman's murder and the unknown baby's sexual abuse were uncorroborated, we nonetheless find that her statements were sufficiently reliable. The DHHR provided the testimony of a worker who gave a first-hand account of the unacceptable, predatory, and

---

[4]The residual exceptions to the hearsay rules permit the admission of hearsay statements that do not fall within one of the traditional exceptions. Rule 807 provides as follows:

(a) In General. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:

(1) the statement has equivalent circumstantial guarantees of trustworthiness;

(2) it is offered as evidence of a material fact;

(3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

(4) admitting it will best serve the purposes of these rules and the interests of justice.

(b) Notice. The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.

sexualized behavior of the man with whom petitioner left the children. Such testimony corroborated B.M.'s statements of sexual abuse by the man with the same name who stayed in the tent with the family. We further note that petitioner did not object to the child forensic interviewer's qualifications as an expert, nor did she raise any alleged impropriety in the expert's questioning techniques and methods to attack the child's reliability or trustworthiness. Second, this evidence is clearly probative on the material issue of whether the children were abused and/or neglected by petitioner. Third, the circuit court watched the CAC interviews and was in the best position to determine if they were more probative on the point for which they were offered than other evidence and whether they were sufficiently trustworthy and reliable. Fourth, the interest of justice would be served by the admission of these statements considering that there was a presumption of psychological harm to the children that petitioner failed to rebut or otherwise challenge. Finally, the DHHR provided notice that it intended to offer this evidence, and petitioner was provided with a fair opportunity to prepare a defense to the evidence. Based on the foregoing, we find no error in the circuit court's decision to admit and consider the CAC interviews of the children.

Additionally, we find no error in the circuit court's adjudicatory order. Rule 27 of the West Virginia Rules of Procedure for Abuse and Neglect Proceedings provides that "[a]t the conclusion of the adjudicatory hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to whether the child is abused and/or neglected in accordance with the provisions of W. Va. Code § 49-4-601(i)." We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). While the circuit court's adjudicatory order does not include detailed findings of fact regarding the admissibility of the CAC interviews, as discussed above, the record supports their admission. Accordingly, we do not find that the rules were substantially disregarded or frustrated or that vacation of the circuit court's adjudicatory order is appropriate.

Next, petitioner argues that the circuit court erred in denying her motion for reconsideration without holding a hearing. According to petitioner, the circuit court's failure to hold a hearing on the motion violated her due process rights, "particularly given the fact that [petitioner] is homeless, has no phone[,] and no way for her counsel to contact her." We find that petitioner is entitled to no relief, however, because there is no provision for a motion to reconsider in the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, Chapter 49 of the West Virginia Code, or the applicable West Virginia Rules of Civil Procedure. Accordingly, any alleged violation of due process based upon the lack of a hearing on such a motion is misplaced given that the circuit court had no duty to hold a hearing upon a motion for which the law does not provide. Indeed, on appeal to this Court, petitioner cites to no authority that required the circuit court to hold a hearing on her motion for reconsideration, nor does she

cite to any authority allowing for the filing of such motion. Therefore, petitioner is entitled to no relief in this regard.[5]

Petitioner also argues that the circuit court erred in adjudicating her as an abusing parent because she did not abuse the children. Petitioner further asserts that "any neglect of the children was primarily due to [her] lack of financial means and there was insufficient evidence to find that petitioner abused them."[6] We disagree.

---

[5]The record shows that the circuit court converted petitioner's motion for reconsideration into a motion to modify disposition pursuant to West Virginia Code § 49-4-606. However, that statute provides for the modification of dispositional orders, and no such order had been entered at the time the circuit court denied petitioner's motion. Additionally, the circuit court denied petitioner's motion upon a lack of standing because of the termination of her parental rights. As this Court has held,

> [a] person whose parental rights have been terminated *by a final order*, as the result of either an involuntary termination or a voluntary relinquishment of parental rights, does not have standing as a "parent," pursuant to W. Va. Code § [49-4-606], to move for a modification of disposition of the child with respect to whom his/her parental rights have been terminated.

Syl. Pt. 6, *In re Cesar L.*, 221 W. Va. 249, 654 S.E.2d 373 (2007) (emphasis added). Again, this holding is predicated on the entry of an order terminating parental rights, which had not occurred when the circuit court denied petitioner's motion for reconsideration. We note, however, that

> "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syllabus point 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965).

Syl. Pt. 2, *Adkins v. Gatson*, 218 W. Va. 332, 624 S.E.2d 769 (2005). Given the analysis above related to the lack of authority for either a motion for reconsideration in the context of abuse and neglect proceedings or petitioner's assertion that a hearing on the motion was required, it is unnecessary to address the circuit court's denial of this motion on the basis of a lack of standing or any of petitioner's arguments related to standing.

[6]An "abusing parent" is defined as a "parent, guardian, or other custodian . . . whose conduct has been adjudicated to constitute child abuse *or* neglect." W. Va. Code § 49-1-201 (emphasis added). Accordingly, petitioner was found to be an abusing parent based upon her neglect of the children.

We have previously found as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further, pursuant to West Virginia Code § 49-1-201, a neglected child means a child

> [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian[.]

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent. On appeal, petitioner concedes that she neglected the children but argues that any neglect was primarily based upon her lack of financial means. However, the record indicates otherwise, as petitioner was severely addicted to drugs, refused remedial services, was removed from homeless shelters for drug use, and spent her "limited resources on drugs." The DHHR and other social service programs made several attempts to work with petitioner to place her and the children in suitable and safe housing, but she refused to follow through with services. Further, the record indicates that petitioner failed to adequately supervise her children by leaving them in the care of strangers who may have sexually abused them. Petitioner's lack of supervision, continued drug abuse, and refusal of services were not caused by her lack of financial means. Therefore, the circuit court did not err in finding that the children were neglected pursuant to West Virginia Code § 49-1-201.

Lastly, petitioner argues that the circuit court erred in terminating her parental rights without considering a less-restrictive alternative disposition. According to petitioner, the circuit court's termination was improper, "particularly in view of [petitioner's] inability to receive mail or phone messages regarding these proceedings due to her homelessness and poverty[,] which greatly hindered her ability to participate and attend hearings in this matter." We find that petitioner is entitled to no relief in this regard.

Pursuant to West Virginia Code § 49-4-604(b)(6) (2019),[7] circuit courts are directed to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. "'No reasonable likelihood that the conditions of neglect or abuse can be substantially corrected' means that based upon the evidence before the [circuit] court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." W. Va. Code § 49-4-604(c) (2019). Further, West Virginia Code § 49-4-604(c)(3) (2019) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes one in which

> [t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child[ren], as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child[ren].

The record establishes that petitioner failed to follow through with the DHHR's in-home safety plans or accept help from other social service programs prior to the filing of the petition. Moreover, evidence presented during the proceedings established that petitioner refused services; failed to acknowledge her substance abuse problems; and failed to recognize the serious dangers, including sexual abuse, that the children faced while in her care. Although petitioner lacked a cellphone and transportation, she previously appeared at the DHHR office and could have reached her DHHR worker there. She knew of her representation as she attended the preliminary hearing, yet stopped contacting her attorney after July 12, 2019. Petitioner failed to appear at any proceedings after the preliminary hearing or otherwise communicate with the DHHR. As petitioner clearly did not respond to or follow through with the DHHR's rehabilitative efforts, we find no error in the circuit court's finding that there was no likelihood that the conditions of abuse and neglect could be corrected in the near future.

We likewise find that the record supports the termination of petitioner's parental rights as necessary for the children's welfare. Petitioner fails to recognize the harm she inflicted upon the children and the danger she placed them in due to her substance abuse, chronic homelessness, and overall inability to parent. The record also shows that petitioner made no concerted effort to arrange visitations with the children after they were no longer in her custody. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Further, the children deserve permanency, which can be achieved through adoption by their foster family.

---

[7]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

As such, the record supports the finding that termination of petitioner's parental rights was necessary for the children's welfare.

To the extent petitioner claims that she should have been granted a less-restrictive disposition because she may eventually be able to correct the conditions of abuse and neglect, we note that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child[ren] will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the circuit court properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and termination of petitioner's parental rights was necessary for the children's welfare, we find no error in the circuit court's decision to terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decisions of the circuit court, and its October 11, 2019, and November 6, 2019, orders are hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison