# CHARLESTON.

THE FIRST NATIONAL BANK OF RONCEVERTE *v.* W. F. BOONE
*et als.*

(No. 6714)

Submitted September 9, 1930.   Decided September 16, 1930.

*Hubard & Bacon,* for defendants in error.

*M. L. Jarrett* and *Dillon, Mahan & Holt,* for plaintiff in error.

MAXWELL, JUDGE:

The circuit court of Fayette County, sitting in lieu of a jury, held the plaintiff in error, W. F. Boone, to be liable on a note for $1,500.00 dated February 8, 1929, signed "William H. Boone Estate by James D. Boone, Treasurer", and by James D. Boone in his individual capacity. The note in suit was a renewal. The original note in like amount and executed in like manner was dated June 25, 1925.

This suit was instituted against W. F. Boone, R. H. Boone, D. W. Boone, J. A. Boone, James D. Boone, Daniel Boone,

Eli J. Taylor and C. P. Campbell, as partners trading and doing business as the William H. Boone Estate. The six Boones named as defendants were sons of William H. Boone, deceased; and Taylor and Campbell were surviving husbands of the deceased daughters of said William H. Boone. The partnership was denied by W. F. Boone, R. H. Boone, Taylor and Campbell, and there was no proof tending to establish the existence of such partnership. Judgment went by default against D. W. Boone and Daniel Boone. And at the end of the trial the court rendered judgment against James D. Boone and W. F. Boone; the latter alone prosecutes this writ of error.

On June 9, 1925, James D. Boone wrote to the cashier of defendant in error, First National Bank of Ronceverte, requesting loans in indicated amounts for each of five companies; the names whereof and the respective amounts desired were set forth in the letter. One of the companies listed was William H. Boone Estate and the amount indicated as desired for that company was $1,500.00. Within a few days after receiving the letter the cashier went to the home of W. F. Boone to talk to him about the said loans desired by James D. Boone. The cashier says that he went to see W. F. Boone because the latter was a director in the bank and because, further, the cashier knew of the relationship between James D. Boone and W. F. Boone, and thought that W. F. Boone was interested in the said companies. The evidence differs somewhat as to just what transpired between the cashier and W. F. Boone on the said occasion, but the plaintiff's evidence warranted the trial court in believing that the cashier took with him on the said visit the letter which he had received from James D. Boone and showed it to W. F. Boone and asked him in substance what he thought about making the loans, and that W. F. Boone told him in effect that the notes were all right. A few days thereafter the cashier communicated with James D. Boone and indicated to him that the loans would be made; but they were not in fact made by the extending of credits to any of the five companies listed by James D. Boone until after the matters were passed upon by the board of directors of the bank, at a meeting held on the 25th day of June, 1925, at which meeting W. F. Boone

was present in the discharge of his duties as a member of said board. The credits were actually extended to said companies June 30, 1925.

There is no evidence of partnership among the defendants, nor is it shown that they in any wise engaged in business dealings as the William H. Boone Estate. J. D. Boone looked after the affairs of the heirs with reference to the land which they had inherited from their father, particularly with reference to the payment of the taxes and he, presumably for his own convenience, in his communication to the bank requesting several loans, saw fit to refer to William H. Boone Estate as one of his (James D. Boone's) companies.

W. F. Boone is sought to be held liable for the loan made to William H. Boone Estate as a partner on the basis of the statements by him to the cashier when inquiry was made with reference to these matters, as above recited, and on the further ground that as a member of the board of directors of the bank he approved the making of the loan, and made no denial of such partnership, though it does not appear that at the meeting of the board or elsewhere it was stated in his presence that there was such partnership; nor that such inquiry was propounded to him. Of course, if W. F. Boone had permitted himself to be held out as a partner, or, when the cashier made inquiry of him with reference to the loans, if he had led the cashier to believe that William H. Boone Estate was a partnership, of which W. F. Boone was a member, or if when the matter later came before the board of directors of the bank there had been any such representations made in W. F. Boone's presence, and he had not repudiated the same, liability would very properly be fixed upon him. But such are not the facts. The evidence discloses nothing with reference to what took place at the meeting of the board of directors as to this loan when the same was confirmed, except that W. F. Boone was present and approved the loan along with his associates on the board. What he said to the cashier when he was first inquired of about the proposed loans when the cashier visited him at his farm is specifically this, as disclosed by the cashier's testimony: "I don't know that I can repeat exactly what he said,

but he gave me to understand that these companies were all their companies, and that they did not owe any money, and were good, and the note was taken really on his—because of . his statement to me, and later his statements to the board when they were finally passed on by the board of directors, at which meeting he was present." "As I recall, he made this sort of a statement: that they were all good; that they did not owe any money, and he did not understand why J. D. had to borrow money for these companies." "He did not tell me that they were not partners, or he did not tell me that J. D. Boone did not have the right to borrow money. He merely said that the notes were all right; that they did not owe any money; and the notes were taken largely upon the fact that he did not give us the information at the time that I went to him for it, probably." The cashier further says, on cross-examination, that W. F. Boone did not say anything to him to lead him to believe that the William H. Boone Estate was a partnership. It thus seems to be for acts of omission rather than for acts of commission that W. F. Boone would be subjected to liability herein.

The statement of W. F. Boone to the cashier that the companies were good, or that the notes were good, was a mere expression of opinion by him. It was in no sense a misrepresentation or a false representation for which he would be liable. In the absence of such showing and in the absence of any evidence tending to show that W. F. Boone held himself out as a partner or permitted others to hold him out, how can he be held liable in this case? It is to be remembered that the suit is predicated on an alleged partnership. Ordinarily, a man may not be held liable for a debt which he did not specifically contract unless either some positive and purposeful act on his part, or some failure by him to speak when he was in duty bound to speak, has led to another's prejudice. We do not find any such positive and purposeful act here. Nor does the record disclose that by silence, when he was under duty to speak, he caused the bank to be misled. Counsel for the bank place much reliance upon the following statement of law taken from Joyce, Defenses to Commercial Paper, (2nd Ed.), Vol. 2, Par. 939:

"One who, by his words or conduct, induces another to pursue a certain course of action in regard to commercial paper, and the words or conduct are of such a character as would justify a man of ordinary prudence in pursuing that course, may be estopped from showing that the facts, which the other party has been thereby led to believe exist, do not in fact exist, and consequently be precluded from availing himself of a defense which would be inconsistent with the existence of such facts." We recognize this principle of law, but deem it inapplicable here because of the absence of acts or conduct on the part of W. F. Boone, which, by any reasonable construction, could be said to have led officers of the bank to believe that William H. Boone Estate was a partnership of which W. F. Boone was a member. The following cases, which are cited by the author of the foregoing text in support of the section quoted, are typical:

In *Weed* v. *Carpenter*, (N. Y.) 4, Wendall 219, where a man had permitted his friend to forge his name as indorser of numerous bills and notes, and had permitted judgment to go against him therefor by default, and never undertook to make any defense until after the forger had absconded, it was held that proof of these facts was admissible in evidence, and that therefrom the jury might imply an authority from the indorser to the maker thus to use his name.

*Kolp* v. *Specht*, (Tex.) 33 S. W. 714: "In an action on a note, defendant cannot plead failure of consideration through inability of plaintiff to perform certain acts caused by its insolvency, if the payment of the note would have avoided the insolvency."

*Key* v. *Usher*, (Ky.) 99 S. W. 324: "Where defendant and B made a note for the price of corporate stock, with an understanding that neither the sale nor the note should be effective unless M should sign the note and take part of the stock, the payee could not recover from defendant unless M was willing to sign the note and was prevented from doing so by defendant's wrongful act."

*Sweetser* v. *Jordan*, (Mass.) 103 N. E. 905: "Where defendant, indorser on a note, assured the holder, several days before it matured, that a note for the same amount and bear-

ing his indorsement would be given in renewal, such assurance, if relied on by the holder, constituted a waiver by such indorser of demand and notice."

*Bank* v. *Wolfe*, (Md.) 117 Atl. 898: "One by his conduct or by silence may estop himself from defending against payment of a note on the ground that the signature thereto was a forgery, if the holder in relying thereon was misled thereby to his injury and if it is shown that it was the duty of the party, and he had an opportunity, to speak."

These cases indicate very different situations from the one at bar.

As to whether plaintiff in error was derelict in his duty as a director of the bank, in connection with the William H. Boone Estate loan, and thereby caused the bank to suffer financial loss, we do not express any opinion. But, under the showing of this record, we are of opinion, for reasons above set forth, that the judgment against him on the basis of an alleged partnership can not be sustained.

The judgment of the trial court is reversed and the case remanded.

*Reversed and remanded.*