JOHN C. WARD, *Sheriff, Adm'r., etc.*

*v.*

RALEIGH COUNTY PARK BOARD

(No. 10931)

Submitted September 9, 1958. Decided November 25, 1958.

932

*J. W. Maxwell, C. Berkley Lilly, Anthony J. Sparacino,* for plaintiff in error.

*Thornhill & Thornhill,* for defendant in error.

BROWNING, JUDGE:

This is an action of trespass on the case by John C. Ward, Sheriff of Raleigh County, as administrator of the estate of John W. Crawford, deceased, against the Raleigh County Park Board to recover damages for the alleged wrongful death of his decedent. The jury returned a verdict for the defendant, which verdict was set aside by the trial court, and a new trial awarded the plaintiff upon the ground that error had been committed in the admission of certain testimony. The setting aside of the verdict upon this ground is the sole assignment of error in behalf of the plaintiff in error. However, the defendant in error has cross-assigned as error the action of the trial court in admitting similar testimony by other witnesses for the defendant. The declaration alleges that: The defendant owned and maintained a large artificial lake used by the public generally for swimming and boating purposes; the lake was operated on a commercial basis and for profit; the deceased and his three companions rented from the defendant one of the boats operated thereon, and secured the services of an

operator for it; it was the duty of the defendant to furnish boats and equipment in a good state of repair, to maintain on said boats life preservers and other safety equipment; and to provide an operator who would exercise ordinary care for the safety of the passengers. The declaration charges the breach of these duties and resulting damages.

The facts in so far as they are pertinent show that deceased, his brother James, and two young women, Gilkerson and Blevins, engaged a boat and an operator for the customary trip of two laps around the lake, and that after the boat had completed approximately one and one-half laps James stood up in the boat, the boat sank, and decedent was drowned. This is the second time this case has been before this Court on writ of error. At the first trial, the jury returned a verdict for the plaintiff in the sum of $7,500.00, but the trial court set aside the verdict and sustained the demurrer of the defendant to the declaration. This Court in *Ward* v. *The County Court of Raleigh County*, 141 W. Va. 730, 93 S. E. 2d. 44, reversed the action of the Circuit Court of Raleigh County in holding that the Park Board was immune to this action.

At the first trial, James and the two young women, Gilkerson and Blevins, testified for the plaintiff. At the second trial, the women were not in attendance and, by agreement, their testimony, given at the first trial, was read to the jury. At the first trial, Gilkerson and James denied that any of the members of their party had been drinking alcoholic liquor on the day of the accident, and this evidence was not contradicted. However, at the second trial, the defendant offered three witnesses who testified, over objection, to statements made by the witnesses James Crawford and the two women, approximately fifteen to thirty minutes after the drowning of deceased. The trial court in its opinion, stating its reasons for setting aside the verdict and granting plaintiff a new trial, specifically pointed to the testimony of de-

fendant Lambert who quoted the witness Gilkerson as saying "we have been drinking all day." The action of the court in this regard is the sole assignment of error by the plaintiff in error. The defendant in error cross-assigned as error the action of the court in permitting the defense witnesses Powers, Lambert and Bowman to testify as follows:

> Powers: Q: "Tell the jury whether or not in the course of that conversation Jimmy said to you, 'Oh, My God, we had been drinking. If we hadn't been, this would have never happened,' or words to that effect?"
>
> A: "Yes, sir."
>
> "* * *"
>
> Q. "Tell the jury whether or not either of these women made any statement there on that occasion with reference to having been visiting the beer gardens that day?"
>
> A: "I don't recall them saying a beer garden, but I do remember they saying that they had been running around all day and had been drinking."
>
> Lambert: Q: "What did she say to you on that occasion with reference to having been drinking?"
>
> A: "We have been drinking all day."
>
> Bowman: Q: "What did they say with reference to having been drinking that day?"
>
> A: "They indicated they had been."

Immediately after this question, Bowman was further asked:

> Q: "Did they so state?"
>
> A: "They did."
>
> "* * *"
>
> Q: "Did you at the time that you was there smell intoxicants on their breath?"
>
> A: "I did."

In the above questions and answers, the "Jimmy" referred to was James Crawford, and the "they" referred

to presumably were the two young women, Gilkerson and Blevins.

The record before this Court contains Defendant's Bill of Exceptions No. 1, which includes all of the evidence and testimony introduced or offered, as well as the objections and motions made by the respective parties with respect to the evidence and testimony offered and given, the rulings of the court thereon and the exceptions of the respective parties thereto. Therefore, we conclude that the cross-assignments of error of the defendant in error are before us, as well as the assignment of error of the plaintiff in error. *Woodruff* v. *Gilliam,* 116 W. Va. 101, 179 S. E. 873; *State* v. *Bragg,* 140 W. Va. 585, 87 S. E. 2d. 689.

It was not error to permit the witness Powers to testify to the statement alleged to have been made by James Crawford after his brother was drowned and he and the other occupants of the boat had been pulled out of the water. Upon cross-examination of James Crawford at the second trial, proper foundation was laid for this alleged prior inconsistent statement. A different situation prevailed as to the two women, Gilkerson and Blevins. At the first trial, Gilkerson testified that there had been no drinking prior to the accident, but Blevins was not asked any question concerning that matter. It was not error to admit the testimony of the defendant's witnesses, to the effect that they smelled the odor of alcoholic liquor upon the breaths of the young women, since this evidence was admissible as contradicting the testimony of Gilkerson at the first trial, and the testimony of James Crawford at the second trial, that none of the members of the party had been drinking prior to the accident. However, the statements attributed to these witnesses could be admissible only under the res gestae exception to the hearsay rule, inasmuch as no foundation was laid at the first trial for the contradiction of these witnesses by alleged prior inconsistent statements.

There have been many definitions of the term res

gestae. It is defined in Black's Law Dictionary, Third Edition, Page 1539, thus: "Things done; transactions; essential circumstances surrounding the subject. The circumstances, facts, and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character." Black cites *State* v. *Prater,* 52 W. Va. 132, 43 S. E. 230, among others, under this definition. There can be no doubt that the strict requirements of the admissibility of testimony under the so-called res gestae exception to the hearsay rule have been broadened by the decisions of this and other courts in recent times. This practice was severely criticized by former Dean T. P. Hardman of the West Virginia University Law School in an article entitled "Spontaneous Exclamation v. Res Gestae", in 26 West Virginia Law Quarterly, Page 341. Dean Hardman called the phrase res gestae a "mystic shibboleth". His article is particularly critical of the decision of this Court in *Starcher* v. *South Penn Oil Co.,* 81 W. Va. 587, 95 S. E. 28, in which it was held that the statement of deceased, who was found apparently unconscious, and immediately after regaining consciousness, in answer to a question as to what hurt him, pointed to a broken pipe line and said: "That hurt me, it struck me in the back.", was admissible as part of the res gestae. In his article, the Dean states that: "* * * the doctrine, strictly applied, excludes all statements made *after* the *act* has occurred, for otherwise the statement can not be said to be a part of the act, *i. e.,* 'a part of the *res gestae'."* In *Sample* v. *Consolidated Light Co.,* 50 W. Va. 472, 40 S. E. 597, 40 S. E. 694, 57 L. R. A. 186, it was held that a declaration to be part of the res gestae need not be "precisely and astronomically contemporaneous and concurrent in point of time with the principal transaction * * *." Perhaps the most dependable rule of all was laid down in *Ellis, et al.* v. *Dempsey,* 4 W. Va. 126, in which it was held that there can be no precise general rule as to what is properly admissible as a part of res gestae. Whether the name of the rule under which such testimony is admitted be called res

gestae, spontaneous exclamations, or otherwise, this and all of the other courts of this country have admitted such testimony if made under the immediate and unconscious influence of the principal transaction, and at a time and under such circumstances and conditions as to preclude the idea of deliberate intent and design. In *Beck* v. *Dye*, 200 Washington 1, 92 P. 2d 1113, 127 A. L. R. 1022, the Washington Court held these to be the essential elements to the admission in evidence of a statement under the res gestae exception to the hearsay rule. "* * * (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation; and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made." For reasons hereinafter stated, it is not necessary to determine whether the testimony of defendant's witnesses, relating to the statements alleged to have been made subsequent to the accident, was admissible under the res gestae exception to the hearsay rule.

The sole issue before the jury in this case was the proximate cause of the sinking of the boat. James Crawford testified that: "I raised about half way up when I seen the boat was filling up with water.", was told by the operator to sit down and did so. The two young women corroborated this statement. The operator of

the boat testified that no water came into the boat until James stood up "and his weight went to the front end of the boat and it sank." Other witnesses for the defendant who were on the dock corroborated him as to the actions of James and the shouting of the operator of the boat to James to sit down. No witness testified that either the deceased, his brother James, or the two young women, was intoxicated. The operator stated that he did "not know that they had been drinking." There is no evidence that the drinking of intoxicants by any of the persons in the boat had anything to do with its sinking, except the inference that may be drawn from a statement Powers quoted James as making a short time after his brother was drowned to the effect that if "we hadn't been, this would have never happened." James vehemently denied having made such statement, and also denied drinking on that day. The statement attributed to the witness Gilkerson after the accident that "we" had been drinking all day, and the statements attributed to both of these young women that "they" had been drinking prior to the accident, should not have influenced the jury in returning its verdict, even though the court, over objection, erroneously permitted the defendant's witnesses to so testify. This Court holds that if it was error to admit the testimony of the defendant's witnesses, relative to the statements of the two young women shortly after the drowning, it was harmless error. As was stated by this Court in *Dorman* v. *Baltimore and Ohio Railroad Company*, 125 W. Va. 8, 22 S. E. 2d. 703: "* * * We render high deference to the opinion of a trial judge who has set aside a verdict, but we are not bound absolutely thereby. In this case the Judge expressly found that, aside from the admission of this copy of the agreement rather than requiring the production of the original, the case was fairly tried. It would seem that the meticulous concern of the trial judge for the rights of the parties led him to assume too much blame for what he felt to be his own judicial lapse. If error at all, it was perfectly harmless, and did not re-

quire him to set aside a verdict, which otherwise he found, and we now find, to be perfectly sound."

"The court is not authorized to interfere with the verdict of a jury fairly rendered upon a mere conjecture or belief that injustice may, in its opinion have been done. All intendments and presumptions are in favor of the verdict, and the court in setting it aside must act on facts brought to its attention. It must affirmatively appear to the trial-court that the verdict was either plainly contrary to the law or the evidence, or that it was palpable (sic) unjust for some other manifest reason." *Probst* v. *Braeunlich,* 24 W. Va. 356, 154 S. E. 868.

The judgment of the Circuit Court of Raleigh County will be reversed, the verdict of the jury reinstated, and judgment will be entered here for the defendant, with costs in this Court and the court below.

> *Judgment reversed;*
> *verdict reinstated;*
> *judgment entered here.*