IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

FILED
May 1, 2026
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 23-570

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

JEFFREY JOHN PAGLIA,
Defendant Below, Petitioner.

Appeal from the Circuit Court of Harrison County
The Honorable James A. Matish, Judge
Case No. CC-17-2022-F-207

REVERSED AND REMANDED

Submitted: February 10, 2026
Filed: May 1, 2026

C. Matthew Hickman, Esq.
Fairmont, West Virginia
Counsel for Petitioner

John B. McCuskey, Esq.
Attorney General
Mary Beth Niday, Esq.
Assistant Attorney General
Office of the Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WOOTON delivered the Opinion of the Court.

JUSTICE EWING concurs and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.  "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

2.  "Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury." Syl. Pt. 2, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979).

**WOOTON, Justice:**

The petitioner, Jeffrey John Paglia, appeals the Circuit Court of Harrison County's September 5, 2023, sentencing order following a jury trial in which he was convicted of one count of grand larceny and one count of conspiracy to commit grand larceny. He asks this Court to set aside these convictions because the circuit court improperly allowed the jury to hear evidence that at the time of his arrest he was on supervised release for a prior federal conviction. The petitioner argues that the court erred in concluding that his supervised release status was admissible as evidence intrinsic to the crimes for which he was tried, and further that the court's error was not harmless. After our review of the parties' briefs and oral arguments, the appendix record, and the pertinent legal authority, we agree with the petitioner. We therefore reverse the petitioner's convictions and remand for a new trial.

## I.    FACTS AND PROCEDURAL HISTORY

Assist Services, LLC ("Assist"), a traffic control and flagging company headquartered in Pennsylvania, had employees working in North Central West Virginia in May 2021. Some Assist employees stayed at a hotel in Bridgeport, West Virginia. Assist had an agreement with the hotel allowing it to park company vehicles in the hotel's parking

1

lot. Assist employees left the keys for the vehicles at the hotel's front desk, and Assist employees then checked out vehicle keys from hotel personnel prior to their shifts.

On the afternoon of May 25, 2021, Alicia Williams, who had recently stayed at the hotel and was known to hotel personnel, came into the lobby with the petitioner. Ms. Williams was not an employee of Assist. Nevertheless, Ms. Williams walked to the front desk and misled a hotel employee into believing that she was working for Assist, stating that she needed a key to a company vehicle. At the same time, the petitioner, who was standing near the lobby door, called to Ms. Williams saying "[i]t's time to go. Let's go. You're going to be late for work." At that point the hotel employee gave Ms. Williams the key to a 2020 white Ford Escape owned by Assist, and Ms. Williams and the petitioner left the lobby together.

After Ms. Williams and the petitioner left the hotel, an Assist operations manager received a call from a concerned citizen who advised that an Assist vehicle was operating erratically. The operations manager was able to track those complaints to the vehicle taken by Ms. Williams and was able to see that vehicle's route due to GPS tracking in the vehicle. The operations manager determined that the vehicle in question committed several traffic infractions. The operations manager also notified 911 that the driver of the vehicle was not authorized to operate the vehicle.

Several hours later, through use of a GPS tracker Assist had installed in the Ford Escape, local law enforcement officers located the vehicle parked at the Sheetz convenience store in Clarksburg, West Virginia. When officers approached the vehicle, audio and video footage from their bodycams showed Ms. Williams in the driver's seat and the petitioner in the front passenger seat. The bodycam footage further recorded Ms. Williams telling law enforcement officers she was an employee of Assist and the petitioner agreeing with that statement. The officers found various items of personal property belonging to Ms. Williams in the rear of the vehicle, and after they determined that neither Ms. Williams nor the petitioner was an employee of Assist and that neither had permission to take the vehicle, both were arrested.[1]

A grand jury indicted the petitioner on charges of grand larceny in violation of West Virginia Code section 61-3-13(a)[2] and conspiracy to commit grand larceny in violation of West Virginia Code sections 61-3-13(a) and 61-10-31.[3]

---

[1] Ms. Williams was convicted in a separate proceeding of one count of grand larceny and was sentenced to not less than one year nor more than ten years in prison. Ms. Williams did not testify during the petitioner's trial.

[2] West Virginia Code section 61-3-13(a) provides that "[i]f a person commits simple larceny of goods or chattels of the value of one thousand dollars or more, such person is guilty of a felony, designated grand larceny . . ."

[3] "*W.Va.Code,* 61–10–31(1), is a general conspiracy statute and the agreement to commit any act which is made a felony or misdemeanor by the law of this

Prior to trial, the State provided the petitioner with the bodycam footage recorded incident to his arrest. Relevant to this appeal, the bodycam footage included a discussion between one officer and the petitioner during which the petitioner volunteered that he was on supervised release for a prior federal conviction and provided his probation officer's contact information.

In a motion in limine, the petitioner asked the circuit court to redact and find inadmissible the audio portions of the bodycam footage which contained references to his prior federal conviction, his supervised release, and his probation officer. The State conceded to most of the petitioner's proposed redactions, stating in a pretrial submission that "the State does not intend on introducing evidence that the defendant was on federal supervised release at the time of the offense and has no issues with redacting the body camera video[.]"[4] Thereafter, at a pretrial hearing, the State reiterated that it did not object to the petitioner's motion to redact certain audio including "the fact that [the petitioner] is on federal supervised release at the time of the incident," as it was "not relevant to the case-in-chief." Notwithstanding the agreement by the parties that certain audio portions of the

State is a conspiracy to commit an 'offense against the State' as that term is used in the statute." Syl. Pt. 1, *State v. Less*, 170 W. Va. 259, 294 S.E.2d 62 (1981).

[4] The State indicated that the petitioner was convicted in federal court of two charges: structuring monetary transactions to evade reporting requirements, and conspiracy to possess controlled substances with intent to distribute. No specific information was provided by the State about these convictions other than the federal court case number.

bodycam footage were not relevant and should be redacted, the court denied the petitioner's motion in limine. The court concluded that the bodycam audio was "intrinsic evidence of the crime charged and will be admissible at trial." According to the court, the bodycam audio "goes to establish motive because he's trying to build an excuse to say, you know, I didn't do this because I'm on supervised release[.]"

The case proceeded to a jury trial in July of 2023. Petitioner's counsel restated his objection to the State's admission of the unredacted audio from the bodycam footage, to no avail. The unredacted bodycam video was admitted into evidence and played for the jury, after which the court offered the following cautionary instruction to the jury:

> You've heard during the playing of the bodycam in this case, which is evidence, that the defendant may have been on supervised release. You should not read anything into this fact. It is not relevant for your determination of the defendant's guilt on these two charges. Rather the [c]ourt has ruled it to be admissible because it is what's known as intrinsic evidence. It is part and parcel of the traffic stop in this particular case. It is not evidence of the defendant's guilt, and you should not consider [it] as such. Do you all understand that?

The petitioner testified in his own defense that Ms. Williams was a friend who, in the evening prior to their arrest, had stayed at the petitioner's house. The following morning the petitioner drove her to Hillbilly Towing to retrieve her personal property from a vehicle that was being stored there. The petitioner testified that Ms. Williams then asked him for a ride to the hotel because Ms. Williams claimed that she had gotten a job working for Assist and that she was going to work. At the hotel, Ms. Williams procured a key to the

Assist vehicle. The petitioner said he drove away from the hotel in his own vehicle and returned to his home, but Ms. Williams was there in the Assist vehicle before he arrived. He then got into the Assist vehicle with Ms. Williams and she drove him to look at a house. After another brief stop, they proceeded to the Sheetz in Clarksburg where they were apprehended by law enforcement.

The petitioner adamantly denied that he was involved in any agreement to steal a vehicle. Instead, he testified that he "was totally fooled" by Ms. Williams, that he was misled just like the hotel employee who gave Ms. Williams the keys to the vehicle, and that he did not act in concert with Ms. Williams in her decision to improperly take the vehicle. Moreover, he denied any knowledge that Ms. Williams was not an employee of Assist and that she was not authorized to take the vehicle.

Following a two-day jury trial, the petitioner was convicted of grand larceny and conspiracy to commit grand larceny. He was sentenced to one to ten years for the grand larceny charge and one to five years for conspiracy to commit grand larceny, with the sentences to run concurrently. He now appeals.

## II.    STANDARD OF REVIEW

"A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). With this standard in mind, we proceed to the parties' arguments.

## III.   DISCUSSION

The petitioner argues that the circuit court abused its discretion by permitting the State to introduce the unredacted bodycam audio regarding the petitioner's supervised release for a prior federal conviction. The petitioner contends that the bodycam audio includes impermissible character evidence of a crime, wrong, or other act whose admission is precluded by Rule 404(b)(1) of the West Virginia Rules of Evidence. The petitioner contends that the admission of the bodycam audio regarding his supervised release for a prior federal conviction was not harmless and prejudiced the jury against him. We agree.

Rule 404(b)(1) provides: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, this Court has often said that "evidence which is 'intrinsic' to the indicted charge is not governed by Rule 404(b)." *State v. Mason*, 251 W. Va. 805, 815, 916 S.E.2d 647, 657 (2025) (quoting *State v. Harris*, 230 W. Va. 717, 722, 742 S.E.2d 133, 138 (2013) (per curiam)). *Accord State v. Baker*, 230 W.

7

Va. 407, 414, 738 S.E.2d 909, 916 (2013). "Thus, before conducting any Rule 404(b) analysis, a court must first determine if the 'other bad acts' were intrinsic or extrinsic evidence." *Mason*, 251 W. Va. at 815, 916 S.E.2d at 657.

In *State v. LaRock*, 196 W. Va. 294, 312 n.29, 470 S.E.2d 613, 631 n.29 (1996), we noted that "other act" evidence is intrinsic when the other act and the crime charged in the indictment are inextricably intertwined, both acts are part of a single criminal episode, or when the other act was a necessary preliminary step toward the commission of crime charged. *See also United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990) (reciting the three-part test for intrinsic evidence adopted in *LaRock*). Generally speaking, evidence of other acts is only admissible as "intrinsic" when it provides part of "'the context of the crime' or is necessary to a 'full presentation' of the case, or is . . . appropriate in order 'to complete the story of the crime on trial by proving its immediate context[.]'" *United States v. Masters*, 622 F.2d 83, 86 (4th Cir. 1980) (citations omitted).[5]

---

[5] The circuit court determined that the evidence was "res gestae as intrinsic evidence." Res gestae is defined as "[t]he events at issue, or other events contemporaneous with them. In evidence law, words and statements about the res gestae are usu[ally] admissible under a hearsay exception (such as present sense impression or excited utterance)." *Black's Law Dictionary* (12th ed. 2024). *See also Ward v. Raleigh County Park Bd.*, 143 W. Va. 931, 936, 105 S.E.2d 881, 884 (1958) ("The circumstances, facts, and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character."). This Court has held that "[e]vents, declarations and circumstances which are near in time, causally connected with, and illustrative of transactions being investigated are generally considered *res gestae* and admissible at trial." Syl. Pt. 3, *State v. Ferguson,* 165 W. Va. 529, 270 S.E.2d 166 (1980), *overruled on other grounds by State v. Kopa,* 173 W. Va. 43, 311 S.E.2d 412 (1983). *Accord* Syl. Pt. 7, *State v. McKinley,* 234 W. Va. 143, 764 S.E.2d 303 (2014); Syl. Pt. 9, *State v. Anthony M.*, 251 W. Va. 485, 914 S.E.2d

Nothing in the record below establishes that the bodycam audio recordings of the petitioner's statements regarding his prior federal conviction, his supervised release, or his probation officer—the "other acts" evidence challenged by the petitioner—were intrinsic to the alleged larceny of the Assist vehicle. The State offered no evidence suggesting that the "other acts" evidence was inextricably intertwined with the theft of the vehicle. Nothing suggests the acts were part of a single criminal episode: the "other acts" appear to have involved wholly unrelated federal offenses committed almost a decade earlier; to wit: unlawful structuring of monetary transactions and possessing an illicit substance. Finally, the State offered nothing to show that the other acts were a necessary preliminary event to establish the context of the crime charged, i.e., to present the complete story of the larceny of the Assist vehicle. Indeed, the State conceded below that the petitioner's federal matters were not necessary to the presentation of its case in chief. Accordingly, we conclude that the circuit court abused its discretion in its determination

---

720 (2025). As this Court explained "[t]he *res gestae* exception was an umbrella exception that permitted trial courts to admit assorted spontaneous extrajudicial statements if there was contemporaneity between the act established and the declarations[.]" *State v. Phillips*, 194 W. Va. 569, 576, 461 S.E.2d 75, 82 (1995). Further, "[t]he present sense impression exception [as recognized by the West Virginia Rules of Evidence] is an outgrowth of the common law *res gestae*[.]" *Id.*

In recent years, we have acknowledged that "[s]ince Rule 404(b) was enacted, the term res gestae has largely given way to its modern, de-Latinized descendant: intrinsic evidence[.]"*Baker*, 230 W. Va. at 414 n.17, 738 S.E.2d at 916 n.17 (quoting *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010)).

9

that the bodycam evidence challenged by the petitioner was intrinsic to the charges for which he was tried.

As the "other acts" evidence recorded on the officer's bodycam was not "intrinsic," the petitioner argues the circuit court should have found the evidence to be inadmissible under Rule 404(b) of the West Virginia Rules of Evidence. We agree. Rule 404(b)(1) specifically provides that "[e]vidence of a crime, wrong, or other act *is not admissible* to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." (Emphasis added). Rule 404(b)(2) permits the limited admission of such other act evidence, but only for specific purposes, and only if the State identifies the specific purpose and the circuit court then finds in a hearing that the evidence is relevant (Rules 401 and 402). Additionally, the court should exclude the evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence (Rule 403). *See* Syl. Pts. 1 and 2, *State v. McGinnis*, 193 W. Va. 147, 455 S.E.2d 516 (1994). In the instant case, the State never identified any particular purpose for introducing the "other acts" evidence, never sought a *McGinnis* hearing, and the circuit court never made the requisite findings; accordingly, Rule 404(b) bars the admission of the disputed bodycam audio. Moreover, Rule 401 defines relevant evidence as that which tends to make a fact of consequence in determining the action more or less probable than it would be without the evidence. If this standard is not

10

met, the evidence is irrelevant, and per Rule 402: "Irrelevant evidence is not admissible." The State admitted to the circuit court that the evidence was "not relevant to the case-in-chief." We cannot discern from the record how the officer's bodycam audio concerning the petitioner's federal release status makes any fact consequential to the alleged larceny of the vehicle more or less probable. In sum, the "other acts" evidence is irrelevant and inadmissible.[6]

Having determined that the circuit court abused its discretion in ruling that the evidence of the petitioner's supervised release was intrinsic to the crimes charged in this case, we now turn to whether the error was harmless. We have long held that

> [w]here improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

Syl. Pt. 2, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979).

---

[6] Inasmuch as we have concluded that the evidence in question does not meet the relevance threshold as contained in Rule 401 of the West Virginia Rules of Evidence, we need not address the petitioner's argument that the evidence should be excluded by the balancing test contained in Rule 403 of the West Virginia Rules of Evidence.

As the *Atkins* Court explained, the circuit court must evaluate the strength of the State's evidence separate and apart from the evidentiary error and must "analyze the impact of the error on the jury verdict." *Id.* at 514, 261 S.E.2d at 62. Stated another way, "where a nonconstitutional error has been asserted, we have adopted the general rule that the case will not be reversed unless the error is prejudicial to the defendant." *Id.* at 510, 261 S.E.2d at 60 (citations omitted); *see also State v. Potter*, 197 W. Va. 734, 748, 478 S.E.2d 742, 756 (1996) ("Our cases consistently have held that nonconstitutional errors are harmless unless the reviewing court has grave doubt as to whether the [error] substantially swayed the verdict."). *Accord State v. Salmons*, 203 W. Va. 561, 509 S.E.2d 842 (1998); *State v. Rahman*, 199 W. Va. 144, 483 S.E.2d 273 (1996); *State v. Young*, 185 W. Va. 327, 406 S.E.2d 758 (1991); *State v. Ferrell*, 184 W. Va. 123, 399 S.E.2d 834 (1990), *cert denied,* 501 U.S. 1207 (1991); Syl. Pt. 3, *State v. Kessler*, 248 W. Va. 289, 888 S.E.2d 789 (2023).

The petitioner contends that he had a right to a fair trial based solely on the facts and circumstances that took place on or around May 25, 2021, and that he should not have had to defend himself from incidents in the past that were both unrelated and removed from the charges for which he was tried. We agree. Consistent with *Atkins*, we must evaluate the strength of the State's evidence apart from the evidentiary error and must "analyze the impact of the error on the jury verdict." *Id.* at 514, 261 S.E.2d at 62. The State did not present testimony from the petitioner's co-conspirator or other direct evidence in

12

support of the petitioner's convictions. Instead, it built its entire case on weak circumstantial evidence—that the petitioner was by the door of the hotel lobby while his alleged co-conspirator was at the hotel's desk obtaining the keys to the car; and that the petitioner was a passenger when the car was found by law enforcement—coupled with an attack on the petitioner's credibility by showing he was on federal release for an earlier crime, to establish that the petitioner committed grand larceny and conspiracy to commit grand larceny. Conversely, the petitioner adamantly denied any involvement in the larceny of the vehicle and he testified that he was just as fooled by his co-conspirator as the hotel employee who gave her the keys to the vehicle. Despite the paucity of the evidence presented by the State, the petitioner was convicted of both counts that were presented to the jury. But for the bodycam audio, the jury would not have learned that the petitioner had a prior criminal conviction, that he was on supervised release at the time he was arrested, or that he had a probation officer.[7] Analyzing the record before this Court, we conclude that the circuit court's error in admitting the unredacted bodycam footage was prejudicial

---

[7] We acknowledge that the circuit court issued a limiting instruction to the jury and that we normally presume jurors will follow limiting instructions. *State v. Sites*, 241 W. Va. 430, 442 n.20, 825 S.E.2d 758, 770 n.20 (2019). However, "[o]n rare occasions, this assumption may be overridden in circumstances 'in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.'" *United States v. Bugakov*, 657 F. App'x 645, 647 (9th Cir. 2016) (quoting *Bruton v. United States*, 391 U.S. 123 (1968)). Given the nature of the evidence at issue here (prior criminal misconduct), we think that this is one of those rare cases where a limiting instruction is insufficient.

to the defendant. Accordingly, we reverse the petitioner's convictions and remand the case for a new trial.

## IV.  CONCLUSION

For the reasons stated above, we reverse the Circuit Court of Harrison County's September 5, 2023, order sentencing the petitioner for his convictions of grand larceny and conspiracy to commit grand larceny, and remand for a new trial.

Reversed and remanded.